**DILLARD'S, Inc. v. GENTRY et al.**

No. 6722.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 4, 1954.

Rehearing Denied March 4, 1954.

R. T. Bailey, Dallas, for appellant.

Thomas H. Stilwell, Keeney & Stilwell, Otto Atchley, Atchley & Vance, Texarkana, for appellee.

WILLIAMS, Justice.

In this common law action for the death of J. O. Gentry growing out of a collision of two motor vehicles appellees Mrs. Marie Gentry and Miss Paula Gentry, the surviving wife and child, respectively, of deceased, recovered judgment for damages against Dillard's, Inc., and E. L. Sampson, both jointly and severally, the defendants below. Dillard's, Inc., alone has appealed.

The collision which occurred at a street intersection in Texarkana involved a Lincoln passenger automobile then owned and being operated by E. L. Sampson and a delivery truck then owned by deceased in which he was riding.

Appellees' right of recovery is grounded on their contention, as found by the jury, that "at the time of the collision Sampson was an employee of the defendant, Dillard's, Inc." Under the only points urged on this appeal, appellant asserts here, as in the trial court in motions for verdict timely presented, that the evidence wholly failed to show that on the occasion of the collision Sampson was then an agent, servant or employee of this appellant; and that there was no legally competent evidence adduced to show such alleged relationship. As appellant seeks a reversal and rendition of the judgment based on such position, we pretermit details of the evidence as to negligence or of the findings of the jury thereon and confine our observations solely to this only question raised on appeal.

On May 2, 1952, the date of the collision, for years prior thereto and continuously since, appellant has owned and operated a department store in Texarkana. Of the twenty-eight departments in operation in the store, seven were classified as lease departments. The sewing machine department which was being operated by Sampson on the date of the collision was

one of the seven classified as a lease department. Sampson had operated the sewing machine department since October 1951 and continued to operate same after the collision for months thereafter. The record does not disclose if he was still so engaged at the time of the trial in February, 1953.

The terms of the operating or lease agreement that appellant and Sampson made at the beginning and which continued during the months that followed rests wholly on parol. They did not enter into a written agreement. According to the testimony of both Sampson and W. T. Dillard, president and general manager of appellant, their agreement which they entered into at the beginning and which they observed at all times are next herein set out. Appellant was to and did furnish Sampson a specified unenclosed space in the store for the display, sale and maintenance of sewing machines; and did furnish Sampson the various utility services such as heat, light and janitor, including use of a telephone through a PBX system maintained in and by the store and advertising services later herein set out. Sampson was to observe and respect the general policies of the store, such as he or some one of his help was required to be on duty to contact, explain and otherwise promote the sale of the machines during the hours the store was open for business.

In return for above arrangement, Sampson agreed to and did through the period pay to appellant fifteen per cent of the sale price of the machines sold. In keeping with their agreement, if Sampson sold a machine for cash, he made out a sales slip showing such fact and deposited the sales slip and the cash so received with the bookkeeping department of appellant. If he sold a machine for part cash and the remainder on credit payable in installments, he would deposit such cash payment with appellant, and if appellant's credit department approved the credit risk, the appellant would accept the note and credit Sampson with the amount of such note. If so accepted, then Sampson was relieved from the expense of collecting the payments and any and all defaults in payments were at the expense of appellant. Under the set-up, Sampson drew $150 twice a month from appellant for living expenses. This was charged to Sampson's account.

Sampson was not carried on appellant's social security reports, nor did it withhold any taxes under the withholding tax law of our Federal Government. Sampson did not file a declaration of his anticipated income. In response to the question, namely, "You make your income tax return out each year, I suppose?" Sampson answered, "Yes, sir." The record is silent as to the contents of any income tax report.

During the period, Sampson did the buying of the machines of his own choice, buying from several sources by mail or telephone and once by a trip to the offices of a distributor out of the city. Sampson determined or set the sale price of the machines and did not confer with appellant in that respect. The record is silent as to who financed the purchases made by Sampson. Under the agreement Sampson, who was an experienced sewing machine mechanic, was to and did service at his own expense the machines he sold. Such calls "frequently, but not too often" came in and he would answer same. He was driving his automobile, which he had owned for several years, on his return from such a mission at the time of the collision.

Only Sampson worked in the sewing machine department. When Sampson was out on a service call or visiting prospects, if a customer visited the department some lady employed elsewhere in the store who might be idle at the time would obtain the name and address of such calls or visitor and relay such information to Sampson on his return to the department. "If Sampson wanted to take a vacation, he was to employ some one to operate the department." He did take a 2-day vacation at which time he hired a lady at his expense "to

watch the department for me while I was gone."

Appellees introduced in evidence copy of an advertisement that appeared September 7, 1952, in an issue of the Texarkana Gazette, advertising in one section sewing machines with pictures of three, and adjacent thereto pictures of three designs of Freeman's shoes with description of each style and price. The ad with respect to the machines carries the heading, to-wit: "Now for the first time Dillards offers a Cabinet Model Round Bobbin Sewing Machine at a price to fit the budget." The features of each of the three designs shown are then detailed. The price was $84.95 with request to compare with any $129.95 machine. This ad closes with the comment, namely, "As usual use Dillard's Credit Plan! Low, Low, Easy, Easy Terms. Sewing Machine Basement." Appellant provided for the advertising layouts and Sampson and the other leased departments reimbursed appellant for the space used under the discount rates that appellant enjoyed as a large advertiser. The cost of this ad at such discount rates was charged by appellant to the account of Sampson. The record is silent that any sewing machine ad ever appeared prior to May 2, the date of the collision, or prior to this ad of September 7, 1952.

As restated in Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677, 680, and applicable to and controlling the disposition of the points presented, "The supreme test in determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to the right of control"; and as expressed in National Cash Register v. Rider, Tex.Com.App., 24 S.W. 2d 28, 30, by the Commission of Appeals, "the essential question to be determined is whether the employer had the right to exercise control over the details of the work." 56 C.J.S., Master and Servant, § 3 (3). And in the application of the test to the record involved in above Halliburton case, the Supreme Court further stated,

"In deciding this question of right of control it is necessary to examine the evidence not only as to the terms of the contract, but also with reference to who actually exercised control of the details of the work". It is the application of this easily stated test to a given record that presents the difficult problem here.

The automobile of appellant that was involved in the collision carried no signs or insignia of a sewing machine dealer or the name of appellant. The record is silent whether or not appellant contributed to the upkeep or operation of the automobile; or that appellant knew that Sampson was operating the automobile on the date of the collision; or that appellant had or ever exercised any right to direct or control the details as to how, when or where Sampson should service a machine. In National Cash Register Co. v. Rider, supra, and American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 373, 107 A.L.R. 409, both citing numerous authorities, our Commission of Appeals upon records much stronger to support the relation of employer and employee than here, concluded that the supervisory control there involved (which here required Sampson to observe the general policies of the store and to service any machine sold) "related primarily to the contractual features of his employment, and to the attainment of ultimate results, and not to 'physical details as to the manner of performance' of his movements while soliciting, collecting, attending meetings, etc.". And in both instances, the court concluded as a matter of law the plaintiff had failed to establish the relationship of master and servant. See also Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905 and authorities collated on page 907.

In the instant case there are additional features which were not in evidence in above cited decisions. In the consideration of all the facts hereinbefore detailed, "we must view the evidence and all reasonable inferences to be drawn therefrom in the most favorable light for the appellees." Texas Co. v. Freer, 151 S.W.2d

907, 909, in passing upon appellant's motion for an instructed verdict.

The evidence that Sampson bought the machines from whom, where and when he pleased and sold them at prices he set and paid to appellant a flat fifteen per cent of the sales strongly reflects that Sampson was a lessee and refutes the alleged relationship of master and servant. The fact that he hired at his own expense a helper on the occasion that Sampson took a 2-day vacation, and the fact that he operated his own vehicle, a passenger automobile, is further evidence that refutes the alleged relationship of an employee.

The details of the arrangements under which Sampson turned over to appellant the sales ticket on each transaction, the cash received, and the handling and collection of the installment notes when viewed under above stated rule will in our judgment impute the relationship of master and servant and more specifically, that of a departmental head in the store. The drawing account for living expenses would add to above impression. The assistance rendered by other employees of appellant in Sampson's absence as above noted could further reflect the relationship urged by appellees. The advertisement above set out which appeared subsequent to the collision under the name of appellant is a factor to be weighed, not on the grounds of an estoppel but in testing the alleged relationship of master and servant. The requirement that Sampson should service the machines sold, with appellant's right to terminate the arrangement upon 90 days' notice for failure to observe the store's policy are also indicia to be considered in support of the respective claims. Applying the rule last above stated we are of the opinion that the evidence as a whole does not warrant as a matter of law the conclusion that the court erred in refusing to instruct a verdict for appellant. Halliburton v. Texas Indemnity Co., 147 Tex. 133; 213 S.W.2d 677; Walter Irvin, Inc. v. Vogel, Tex.Civ.App., 158 S.W.2d 93, 96; Commercial Credit Co. v. Groceclose, Tex.Civ.App., 66 S.W.2d 709.

The judgment is affirmed.