**Mary KEITH, Appellant,**

v.

**Loy E. BLANSCETT d/b/a Bi-Rite Auto Sales, et al., Appellees.**

**No. 6060.**

Court of Civil Appeals of Texas, El Paso.

Dec. 31, 1969.

Rehearing Denied Feb. 4, 1970.

---

3. The oral agreement entered into between the parties on March 11, 1963.

Gerald K. Fugit, Odessa, and Otis T. Moore, Jr., Lockhart, for appellant.

Shafer, Gilliland, Davis, Bunton & Mc Collum, Connell Ashley, P. W. Mc Crury, Odessa, for appellees.

## OPINION

WARD, Justice.

This appeal is from a summary judgment granted in favor of the defendants involving the death benefits in a voluntary Workmen's Compensation insurance policy. The sole question to be decided is whether or not the appellant's son was, at the time of his death, an independent contractor or an employee of Loy E. Blanscett, proprietor of the Bi-Rite Auto Sales, in Midland, as the term "employee" is defined in the Workmen's Compensation Act, Article 8309, section 1, Texas Revised Civil Statutes.

The facts are undisputed for the purposes of this appeal. Loy E. Blanscett was in the used car business, buying and selling used cars at his lot in Midland and, as a part of his business, sending automobiles to various auctions in Texas and to the Los Angeles Auto Dealer, an auction house in Los Angeles, California. He regularly employed three or four people at his lot, one as salesman besides himself, one as a regular driver on hookups, and the balance clean-up men. Willie Barr, the deceased, had for the past six

months made three or four trips a month to the various auctions with hookups for Mr. Blanscett, a hookup being described as one car towing another by use of a tow-bar, the equipment being owned by the said appellee. Willie Barr, together with three or four other men not on the regular payroll of Bi-Rite, would periodically contact the car lot to see if any hookup work was available and, if so, would be paid in cash for the trip, being paid a flat amount out of which they were obligated to pay for the gas, oil, and their own food and accommodations and were on their own after the delivery of the cars to the various destinations. On hookups to California the lot owner did pay for the State port of entry fee. No Social Security or withholding tax was withheld on these particular hookup drivers, and no workmen's compensation insurance was carried, nor were any of them listed as employees. On the California trips, usually a regular employee of Bi-Rite Auto Sales would make the trip and would be in California to see that the cars came in, to clean them up and to make the sale, but he was not on the particular trip here involved. On all of the auction sales trips, the title to the vehicles would be retained by Bi-Rite Auto Sales and would be forwarded by mail after the sale was completed. On the Califorinia runs, the drivers were told to be at the auction by Tuesday morning, there being no particular time that they had to leave, though on most of these runs the cars were released to the drivers on Saturday afternoon. Willie Barr was instructed by the lot owner to stop occasionally to check the hookup bar and to tighten it; also, he was given instructions as to the best route to take and told to drive carefully. On Saturday, July 7, 1967 Willie Barr was informed that there were available two hookups to California; that he and another driver had been selected and were to be paid at the rate of $60.00 a car, or a total of $120.00 per hookup. The two drivers left the lot at 4:00 P.M. and were told to be in Los Angeles by Tuesday morning, and on this particular trip just to deliver the vehicles direct to the Los Angeles auto dealer. After driving some 65 miles, Willie Barr lost control of the pickup he was driving and, as a result of the accident, was killed. The vehicles, while they were en route, were insured by the car dealer, and as a matter of fact Phoenix Insurance paid for the damage to the two pickups involved in this particular accident. On the Los Angeles run, it was suggested to the drivers that they stay on Highway 80, but apparently they were free to take whatever route they chose, so long as the vehicles arrived in Los Angeles on time. When the hookup arrived in Los Angeles, the job was complete and the occasional drivers were free to go wherever they wished. They did not even have to return to Midland, since Bi-Rite never knew if it would need another occasional hookup driver. Loy Blanscett freely admitted, however, that until such time as these drivers reached their destination, they would have done whatever he had told them to do if he had been able to contact them on the road. In other words, if "they were in El Paso and something happened, a blowout on a car or something happened to the motor, something mechanical some way, and they called me, the directions were given to proceed to California or to come back to Midland, the drivers would have done as instructed."

■ The burden of proof was upon the appellant to show that at the time of the injury to Willie Barr, he was an employee within the meaning of the Workmen's Compensation Act, and the right of control is the determinative test of whether the workman is an employee or an independent contractor. Anchor Casualty Company v. Hartsfield, 390 S.W.2d 469 (Tex.1965); Goodnight v. Zurich Insurance Company, 416 S.W.2d 626 (Tex.Civ.App., Dallas 1967, wr. ref., n. r. e.). The problem, of course, is whether Bi-Rite had the right to control the details of Barr's employment or merely to control the end results of Barr's efforts. In the Supreme Court case, six determinative factors were laid out, and

all were again used as determinative· of the result in the Goodnight case. In those two cases each workman required some special skill; each furnished his own tools; each was doing a particular job according to predetermined plans; each would come to work and leave at times within his discretion; each was paid by the job, and neither of the workmen was carried on the payroll or on the Social Security and income tax withholding rolls of the employer. These identical factors being present, the worker was held to be an independent contractor. The appellee urges that we apply these factors to the present case in arriving at our decision while admitting that each case must be judged on its own merits, and obviously there are fact situations that fit more easily into˙ the six outlined factors than others. So doing as urged, we feel that no special skill was ·required of Willie Barr in driving. the pickup in the sense that the term is generally used, as Bi-Rite had its own drivers; and Loy E. Blanscett himself had made some of the trips. As to the second factor, the pickups and equipment were owned by Bi-Rite. It seems that possibly the balance of the factors would favor the status of an independent contractor. But we feel we have a situation where these factors alone do not answer the problem.

 The difficulty is ably expressed by the Supreme Court in Newspapers, Inc. v. Love, 380 S.W.2d 582· (Tex.1964) which, while not a compensation case, involved the relationship before us:

"Usually, we do not think of one in domestic service as being in any other category than that of a servant; nor do we ordinarily consider a television repairman as being anything other than an independent contractor in his relationship to the householder who requires his services. This is true even though the employer, in one instance, gives no direction as to cleaning a house, or, in the other instance, the employing householder is quite specific as to the details of testing tubes, amplifiers and the like. The concept of control is often an elusive thing, * * * and under certain circumstances the prevailing legal test of 'control of the details of the work' may leave something to be desired in differentiating between the servant and the independent contractor."

Each controversy involving the status of an injured workman must be decided on its peculiar facts, and ordinarily no one feature of the relationship between him and his employer is determinative. As stated, the independent contractor, as distinguished from an employee, performs work according to his own methods and without being subject to the control of his employer, except as to the result of the work. As to the element of control, the right of control, rather than the exercise of the right, is decisive. The degree of control exercised varies according to the nature of the work. Although the right of control exists, the work in a particular case may be of a character which neither requires nor justifies its exercise. In line with the liberal construction accorded the Workmen's Compensation Act, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery.

In a fact situation similar to the one before us, the Supreme Court of Minnesota followed this view and held the workman to be an employee for compensation benefits. Aleckson v. Kennedy Motor Sales ˙Co., 55 N.W.2d 696 (Minn.1952). There the deceased employee, Mr. Aleckson, operated a successful full-time insurance brokerage business in Chicago. For some years his wife and daughter, because of the latter's health, had lived near St. Paul, Minnesota, and though he had continued to reside in Chicago, he had driven nearly every week-end to see his family. Some two years before the fatal accident, he had made an arrangement with a St. Paul

used car lot that if they had bought a car in Chicago that had to be transported to St. Paul, Mr. Aleckson would drive the same to St. Paul while en route to visit his family. Before the accident he had driven at least twelve of the cars from Chicago to St. Paul, and would leave the car at the used car lot on Sunday night before catching a train back to Chicago, being reimbursed for his out-of-pocket gasoline expense. At no time did the used car lot deduct Social Security or income tax, and at no time was Aleckson carried on the payroll as an employee. On one of his trips he was killed, and the critical question presented to the court was the right of control. The contention was advanced that a master-and-servant relationship did not arise because the car lot exercised no control over Aleckson's time of departure, his route, or anything else. The court there stated:

"* * * It is well established, however, that the *right* of control, and not necessarily the exercise of that right, is the test of the relationship of master and servant. The degree of control exercised varies according to the nature of the work. Although the right of control exists, the work in a particular case may be of a character which neither requires nor justifies its exercise."

The court pointed out that where an owner requests a driver to proceed to a distant point, the owner could not posibly direct in detail the driver's physical movements. The factors considered by that court were the following: 1, that the automobile was owned by the used car lot; 2, that by the very nature of motor vehicle driving it would have been impractical to exercise any direct supervision of the car's operation; 3, that it is the custom to permit a chauffeur, whenever convenience so dictates, to proceed unaccompanied by the owner; 4, that the car lot could at all times terminate Aleckson's services by denying him the use of the car; and 5, that Aleckson, in any event, was required to deliver the vehicle to a specific destination by a certain time, namely, to the car lot in St. Paul not later than Monday morning. These same factors are present in the case before us to hold Willie Barr an employee.

This court had before it a similar fact situation, in Commercial Credit Co. v. Groseclose, 66 S.W.2d 709 (Tex.Civ.App., El Paso 1933, wr. dis'm.). This was not a compensation case, but one of the liability of the master in an accident case where the presumption of the relationship of employer and employee—master and servant—arises when it is known that one person is engaged in work for another. The facts are remarkably similar in that a Dallas finance company had repossessed a car in Los Angeles, California. The driver, Morrison, for two years had been engaged in transporting repossessed cars for various finance companies and was hired to transport the repossessed car back to Dallas. He was permitted to carry passengers at his own profit, was to pay his own gas and oil, and was to be paid $30.00 on delivery of the car in Dallas, which was to take care of his wages and transportation back to California. A few miles from El Paso the car ran off the road and a passenger was injured. The contention was there advanced that the driver was an independent contractor as a matter of law, and his court held:

"The evidence in this case, as we view it, falls far short of showing as a matter of law the independence of the contract by which Morrison undertook to drive the car to Dallas. In the first place, the character of the service to be performed is antagonistic to the idea that Morrison was an independent contractor. One delivering an automobile to a railroad for transportation by rail necessarily surrenders all control over the details of the transportation, but it is not to be presumed that such control is surrendered by one who delivers an automobile which he owns or has a lien upon to one who is to drive it to a distant point and there deliver it to some designated person. It

is not a natural inference to assume that the one who is to drive it is at liberty to run at a rate of speed that would injure the car, use insufficient or inferior oil, or otherwise operate the car in such a manner as to injure it. These are details of the work to be done, and the evidence fails to show such surrender of control as would necessarily render Morrison an independent contractor in undertaking to drive the car from Los Angeles to Dallas."

A similar result on similar facts was reached by the Missouri Supreme Court in Garrison v. Ryno, 328 S.W.2d 557 (1959). There the driver was not a regular employee, was paid a lump sum out of which he had to bear the expenses of transporting the car, was instructed only generally with respect to the route, but was instructed specifically with respect to the speed of the operation. There the court stated:

"That Ryno [the potential buyer of the car] had no control over the time Kent [the driver] was to go to work or the time he might stop, and did not give instructions as to where Kent should buy gas and oil, does not compel a different result. The supreme test in determining the relationship is whether the employer had the right to exercise control over the details of the work, Dillard's, Inc. v. Gentry, Tex.Civ.App., 265 S.W.2d 222, not whether control in fact was exercised. From the fact that Ryno, through his agent Howard, did in fact exercise control with respect to several of the details of the work, the jury could have found that Ryno reserved the right to control."

And again the same result was reached by the Oklahoma Supreme Court in Sheppard v. Hall, 282 P.2d 212, on a similar respondeat superior situation. There, Sheppard, the owner of the car, was in Burbank, California and authorized the person from whom he bought the car in Ft. Smith, Arkansas, to find a driver to take the automobile to Burbank. Sharp, who was found as a driver, was in the United States Navy, was stationed in California, and desired to return to his duty station. He was to buy the gas and oil that was consumed on the trip and was to receive $25.00 from the owner when he reached Burbank. The court stated:

"* * * The evidence does not show that very definite instructions were given to Sharp about the manner, method and way that he was to get the car to California, but unquestionably the car belonged to Sheppard, and while Sheppard did not atempt to exert any control over Sharp as to the manner, method and way that he was to get the car to California, it is clear that Sheppard could have done so if he had so desired. The relationship here is one that is looked upon as that of master and servant. It is reasonable to infer that Sharp was to take the most direct route to Burbank and was on it at the time of the accident. * * * In this case Sheppard had the right to control the manner the car was to be operated and the route it was to travel, even though he did not exercise it. We think it is immaterial the fact that he did not attempt to instruct Sharp about the manner of driving and the route he was to travel."

The opinion cites King v. Galloway as its authority, Tex.Comm.App., 284 S.W. 942.

From what we have said, we hold that Willie Barr was an employee of Bi-Rite Auto Sales for the purposes of the Compensation Act. The right of control as to the details of the work did exist. The controlling factors that lead to this conclusion are that no special skill was required of Willie Barr, the two pickups belonged to Bi-Rite, the equipment used was Bi-Rite's; that without the owner being present it would have been impractical to exercise supervision of the truck's operation; and finally, if the need had arisen and the drivers had been contacted, they would have done anything that Bi-Rite dictated.

Without prolonging the discussion, we reverse and remand the case to the trial court for a trial on the merits.

**130**

## ON MOTION FOR REHEARING

Language was inadvertently used at the end of the opinion stating: "we hold that Willie Barr was an employee of Bi-Rite Auto Sales for the purposes of the Compensation Act.". This was error. We hold that the facts as presented on motion for summary judgment do not establish as a matter of law that Willie Barr was an independent contractor, and that a fact issue exists as to whether Willie Barr was an employee of Loy E. Blanscett, proprietor of the Bi-Rite Auto Sales, as the term "employee" is defined in the Workmen's Compensation Act, Article 8309, section 1, Texas Revised Civil Statutes.

With this modification, the motion for rehearing is overruled.