**VAHLSING CHRISTINA CORPORATION, Appellant,**

v.

**RYMAN WELL SERVICE, INC., Appellee.**

**No. 817.**

Court of Civil Appeals of Texas, Corpus Christi.

June 20, 1974.

William L. Morrow, Stiernberg, Skaggs & Koppel, Harlingen, for appellant.

Neal King, Hill, King & Waite, Mission, for appellee.

## OPINION

YOUNG, Justice.

This is a suit on a sworn account brought by Ryman Well Service, Inc. against Vahlsing Christina Corporation for reworking and testing an abandoned and plugged gas well. Vahlsing, in its sworn answer, denied that the prices in the account set forth in the petition were agreed to. Trial was to a jury. The controlling issue submitted for the jury to determine was " . . . the agreed price for the services rendered and material furnished by Plaintiff . . . " The jury answered $62,594.03, which was the total amount of the invoices in the account pled by the plaintiff; of this amount $28,594.03 was the unpaid balance. In addition, the jury awarded plaintiff $3,250.00 attorneys' fees. From this judgment Vahlsing appeals.

In February 1971, Vahlsing Christina Corporation owned farmland north of Edinburg, Texas. There was an abandoned and plugged gas well on this land, which is the subject of this litigation. In late 1970 or early 1971, C. O. Foerster, a man who knew Fred Vahlsing, Jr., contacted the Ryman Well Service for the purpose of re-entering several wells in the area. It appears that he was a type of promoter. Subsequently, he introduced Ray Ryman, president of Ryman Well Service, to Fred Vahlsing, Jr., president of Vahlsing Christina Corporation. This introduction took place over breakfast on a Sunday morning at the Echo Motel in Edinburg.

At this meeting the subject of re-entering the well in question arose. Vahlsing asked how much it would cost. At this point the evidence is disputed. Ryman testified that he quoted $32 per hour for daylight work only and $44 per hour for round the clock

operations. Vahlsing testified that no hourly rate was ever discussed, but rather approximate total prices were mentioned; $15,000 to $16,000 to clean out the well and an additional $14,000, if hydrocarbons were found, in order to make it a producer. On cross examination, Ryman admitted that he may have estimated a total cost in addition to quoting the hourly rate. No agreement was reached at this breakfast meeting. Vahlsing said that he would consider the proposal and give his answer at a meeting scheduled the following day.

Ryman was unable to attend the Monday meeting so he sent Bobby Pawelek, an employee, to find out what Vahlsing's decision was. Pawelek had in his possession at that meeting two letters, one of which was an estimate on a well in Elsa, Texas, the other an estimate on the Edinburg well. The Edinburg estimate was $17,500 for re-work and $13,750 more for completion. This estimate appeared on stationery of "Frank M. Whittington Petroleum Consultant" and was signed by him. All participants at this Monday meeting who initialled or signed this estimate are: Pawelek, Bill Sewell, Foerster and Mrs. D. C. Neuman, a secretary. Vahlsing did not sign. However, it is clear that he gave the go ahead to re-enter the well. Ryman went on location and began preparations for going into the well on February 23, 1971.

Problems were encountered during the subsequent operations. The decision was made to use tubing instead of drill pipe to drill out the plugs. The tubing separated and became stuck on several occasions. Despite this, the well was cleaned out to a depth of 8750' by March 19, 1971. Core samples were taken and these appeared to be favorable. On the basis of this, Vahlsing ordered that the extra money be spent to attempt to complete a producing well.

It is uncontested that Vahlsing and his employees, Sewell and Dan Collins, knew nothing about oil field procedure. Nevertheless, these people gave orders concerning the acidizing and various tests to be carried out on the well. In fact, Ryman testified that Vahlsing ordered a retest of the same sands after the well was plugged. This caused excess work and cost overruns which were not initially contemplated by either party.

Appellant Vahlsing, defendant below, advances fifteen points of error which can be fairly summarized as follows: (1–2) no evidence or insufficient evidence to support special issue no. 1; (3) wrong form of submission of special issue no. 1; (4–8) error in not submitting requested defensive issues; (9) erroneous admission into evidence of exhibit no. 7; (10) jury misconduct; (11) cumulative error; (12–14) erroneous award of attorneys' fees; (15) erroneous award of interest antecedent to the judgment.

■ We shall defer consideration of Appellant's no evidence and insufficient evidence points until after we have confronted the objections to special issue no. 1 which reads:

"What do you find from a preponderance of the evidence to have been the agreed price for the services rendered and materials furnished by Plaintiff, Ryman Well Service Inc., to Defendant Vahlsing Christina Corporation? Answer in Dollars and Cents.

We, the jury, answer $62,594.03."

Appellant's first complaint is that the issue, as framed, permitted the jury to speculate as to the amount without regard to the terms of the agreement. This had the effect of allowing the jury to decide who should win the lawsuit. We disagree. The issues were sharply drawn in the pleadings. The plaintiff alleged that the agreed price was the total of the invoices. The defendant denied this and offered evidence that the price was a flat, "turn key" total price of $31,450. The jury was presented, therefore, with the simple choice of deciding which of the two conflicting prices was the agreed price. The issue, when viewed in the context of the entire

record, limited the jury's choice and prevented speculation. In addition, they found for the plaintiff within the scope of its pleadings. This precluded the objection that the jury speculated to reach their answer.

■ The fact that the jury knew who would win by its answer to this issue is not grounds for reversal. The Texas Supreme Court in Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85, 87 (1954) has stated:

" . . . The spirit of our practice of submitting cases on special issues would be violated if jurors were informed either by the court or by counsel of the effect of their answers, but where the effect is so obvious that any juror with ordinary intelligence would know its effect, neither the letter nor the spirit of the rule is violated by a charge which assumes such knowledge . . . "

We believe it would be almost impossible in a case such as the one before us to shroud the special issues so as to prevent the jury from knowing the effect of their answers, yet, at the same time, retain the conciseness and clarity which our rules of civil procedure demand.

■ Next, appellant complains that the issue amounts to a comment on the weight of the evidence in that it assumes the existence of an *agreed price*. This is partially true. Ryman's pleadings place in issue the invoiced prices by stating: "The price shown were agreed and were the reasonable value of goods and services." Vahlsing in its answer " . . . would show the court that the prices charged by Plaintiff, as reflected on the invoices . . . were not agreed to by Defendant . . . " Both sides then offered evidence of conflicting *agreements*. At no time did Vahlsing deny that *some* price had been agreed to. If the issue assumes the existence of an agreed price, it is because both sides argued that such an agreed price existed, although it be for different amounts. Thus, even though a fact

is assumed in the special issue, if the fact is not disputed or controverted, then there is no error. El Paso Drive-In Cafes, Inc. v. Wilson, 467 S.W.2d 200, 203 (Tex.Civ.App.—El Paso, 1971, n. w. h.).

The appellant then claims that the issue as formed fails to inquire as to any contract which might be implied between the parties. Appellee alludes to such an implied contract in his brief to this court in support of the judgment. We agree with the appellant that such issues were omitted, however, we do not consider this defect fatal.

■ When a plaintiff brings suit in the form of an open account sworn in accordance with Rule 185, Texas Rules of Civil Procedure, he has a prima facie case sufficient to support judgment if the defendant does not deny the justness of the account under oath as prescribed by the rule. Copeland v. Hunt, 434 S.W.2d 156 (Tex.Civ.App.—Corpus Christi, 1968, n. r. e.). It must be kept in mind that Rule 185 is one of procedure with regard to evidence necessary to establish a prima facie case and it is not the basis for any cause or causes of action. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 78 (1958). Where, as here, the defendant files a verified denial of the correctness of the plaintiff's claim, the probative force of the itemized account is destroyed, and plaintiff must prove his claim without the aid of Rule 185. J. E. Earnest & Co. v. Word, 137 Tex. 16, 152 S.W.2d 325, 326 (1941); Jones v. Hydro Corporation, 420 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1967, n. w. h.).

■ One of the essential elements of such proof is the justness of the account. This can be shown in two ways, either that the prices charged were agreed upon by the parties, or, in the absence of an agreement, that the prices were usual, customary or reasonable. Brooks v. Eaton Yale and Towne, Inc., 474 S.W.2d 321, 323 (Tex. Civ.App.—Waco 1971, n. w. h.). In the case before us, the plaintiff's pleadings al-

lege that the prices were agreed on *and* that they were reasonable. Plaintiff then offered evidence of an oral agreement between the parties; that the time sheets were signed by an agent of the defendant; that extra testing was done at the request of the defendant. Thus, the pleadings and the evidence could support a finding of both an expressed and an implied contract. In Haws & Garrett Con., Inc. v. Gorbett Bros. Weld. Co., 480 S.W.2d 607, 609 (Tex.Sup.1972), we find:

"It is said that the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract, (citations omitted). Professor Corbin in his treatise points out, however, that contractual duty is imposed by reason of a promissory expression; and that as to this, all contracts are express contracts, the difference being the modes of expressing assent. So he (Corbin) concludes that the distinction between an expressed and an implied contract is of little importance, if it can be said to exist at all; and that the matter that is of importance is the degree of effectiveness of the expression used. Further, that a promise implied in fact is merely a tacit promise, one that is inferred in whole or in part from expressions other than words on the part of the promissor; *and that it is a question of fact whether or not in a particular case a promise should be so inferred.* 1 A. Corbin, Contracts §§ 17, 18 (1963)." (Emphasis supplied.)

Thus, it is apparent that plaintiff in order to recover anything beyond the expressed agreement needed a fact issue on implied assent to pay for the extra testing or on the authority of defendant's agents to bind the defendant by signing the time sheets from which the invoices were made. There were no such issues submitted.

However, where such omitted issues, as part of a cluster, are not requested and not properly objected to, and where there is support in the evidence, such issues will be deemed found in such manner as to support the judgment. Rule 279, T.R.C.P. We believe this rule applies both to the omitted agency issue and to the assent implied from circumstances. M. C. Winters, Inc. v. Cope, 498 S.W.2d 484, 489 (Tex. Civ.App.—Texarkana 1973, n. w. h.); Skelly Oil Company v. Medical & Surgical Clinic, 418 S.W.2d 574, 578 (Tex.Civ.App.— Tyler 1967, n. w. h.).

The ultimate issue was the justness of the account which plaintiff attempted to prove by submission of the single issue as to agreed price. In the absence of ancillary findings of authority of the agent to control the work done and a finding of an implied promise to pay when requesting extra work, these are deemed found to support the judgment. The evidence presented supports this conclusion. Ryman testified that he took orders from Vahlsing's representative on the job. Ryman also testified that Vahlsing told him that Foerster represented him (Vahlsing) at the well site. Later, because of disagreements which arose, Foerster was replaced by Sewell and still later by Collins. The extent of the authority of these representatives is of course, controverted by Vahlsing. However, this evidence would support a finding that Vahlsing's agents had authority to bind their principal and that their signatures on the work tickets were authorized. In addition, there is ample, uncontroverted evidence that extra work was done which was beyond the contemplation of the parties when the agreement was entered into. This extra work amounted to second tests of the same sands which had been previously tested, on orders of the on-site Vahlsing representatives. From such orders the trial court, in the absence of a jury finding thereon, could find an implied promise to pay for the extra work done. The appellant's

objections to the submission of special issue no. 1 are overruled. Point no. 3 is overruled.

The appellant's points of error nos. 4 through 8 complain that the trial court refused to submit several groups of defensive issues which it requested. These issues can best be considered in groups which correspond to each point of error.

Under point no. 4, requested issues asked the jury to find (1) that the original agreement was for a total price of $31,450; (2) that it has been paid in full; (3) and that Ryman refused to perform the agreement for this price.

Under point no. 5, requested issues asked the jury to find (33) that before commencing the re-entry operation, Ryman Well Service agreed to complete the work for $31,450; (34) and that Ryman has therefore been paid all the money to which he is entitled.

Under point no. 6, requested issue no. 6 asked the jury to find that the reasonable value of all services performed and materials supplied does not exceed the amounts already paid.

It will be noted that each of the issues in succeeding groups essentially duplicate the issues in the preceding group. Rule 279, T.R.C.P., is quite clear in its admonition that only controlling issues be submitted and that the trial court should not submit various phases or shades of the same issue. Holmes v. J. C. Penney Company, 382 S.W.2d 472, 473 (Tex.Sup.1964). We think that the single submission of special issue no. 1 cut quickly to the controlling issue in the case and gave the jury the opportunity to find for either party. Furthermore, the issues inquiring whether the amounts already paid satisfy the claim are merely artfully drawn forms of the price issue. The money paid on the account is not in dispute as to the fact of payment or as to the fact of the amount. These issues were properly denied. Sullivan v. Barnett, 471 S.W.2d 39, 44 (Tex.Sup.1971). Texas

Employers Insurance Ass'n v. Gallegos, 415 S.W.2d 708 (Tex.Civ.App.—San Antonio, 1971 n.w.h.). All these issues are automatically settled by the jury's answer to the question "What do you find . . . to have been the agreed price . . ." Points of error nos. 4, 5 and 6 are overruled.

Under point no. 7, appellant complains of the trial court's refusal to submit requested issues nos. 22 through 28. All of these issues relate to whether it was sound advise given by Ryman that tubing instead of drill pipe could be used on this job.

Under point no. 8, refused issues nos. 12 through 16 relate to whether a lack of adequate supervision by Ryman caused the excess charges to Vahlsing from both Ryman and other suppliers.

We believe the controlling issue covering these two points was submitted in special issue no. 6 with its accompanying instructions which reads:

"SPECIAL ISSUE NO. 6.

Do you find from a preponderance of the evidence that the services performed and supplied by Ryman Well Service, Inc., for the operation in question were not performed and supplied in a good and workmanlike manner?

The term 'good and workmanlike manner' as used in this Issue means work done and supplied in the manner that it would be done and supplied by a reasonably prudent and skillful workover and completion specialist under the circumstances.

We, the Jury, answer: 'The services were performed and supplied in a good and workmanlike manner.' "

The remaining issues (7–10) were submitted conditionally and were all directed to the amount of excess charges attributable to Ryman's poor work (if such was the finding in issue no. 6, which it was not). Here, again, we believe the controlling is-

sues were submitted and the trial court properly denied an unconditional submission of various shades of the same issues. In addition, we note that the requested issues concerning the use of tubing are not supported by the pleadings nor did appellant counter-claim for any specific damages in this regard. Points of error nos. 7 and 8 are overruled.

Appellant's point of error no. 9 states that the trial court erred in admitting plaintiff's exhibit no. 7 into evidence. Exhibit no. 7 was a communication from Howell & Bogdan, certified public accountants, to Ryman Well Service. This communication states that the C.P.A. firm is " . . . auditing the books of our client, Vahlsing Christina Corporation. As of the close of business Jun (sic) 30 1971 their account shows a balance of $38,594.13 payable to you." This is followed by boxes where a representative of Ryman was to check "Account is correct" or "Account does not agree with our records." The Ryman representative concurred that the statement was correct, kept a copy and returned the original to the C.P.A. firm in New Jersey.

When the appellee introduced this evidence, appellant objected claiming it was hearsay which did not fall within a recognized exception; that the predicate for its admission as a business record was not complied with; that it was not admissible as an admission against interest. We agree with these contentions and hold that the communication should have been excluded. Testimony was offered by Frank Whittington that he recognized the exhibit and saw the original when it came through the Ryman office. This testimony does not suffice to authenticate the document as required by Art. 3737e, Vernon's Ann.Civ. St. Section 1 of that article contemplates that the *originator*, not the recipient, of the memorandum must testify as to its prepa-

ration. Neither the appellant nor the C.P. A. firm testified that this communication was made in the regular course of business or by whom it was made.

Nor can it be offered over a hearsay objection as an admission of an agent against the interest of a principal. The proper rule is set out in Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651, 655 (1953):

" . . . Declarations of an agent or employee are admitted against the principal or employer as an exception to the hearsay rule provided the facts bring them clearly within the exception. Not only must the fact of agency be established before the declaration can be admitted, but it must also be established that the declaration was one of fact as distinguished from a mere expression of opinion . . ."

Appellee had the initial burden of establishing agency; this was not done. Answers to written interrogatories were offered to show that Vahlsing employed the C.P.A. firm of Howell and Bogdan to audit its books. Employment, standing alone, does not clothe the employed with the powers of agent. The law of agency must be resorted to in order to determine the true status of the accounting firm. See 2 McCormick and Ray, Texas Evidence § 1164, p. 57 (2d Ed. 1956). The basic test is the right to control. Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677, 680 (1948); Clark v. Texaco, Inc., 382 S.W.2d 953, 958 (Tex.Civ.App.—Dallas 1964, n. r. e.); Keith v. Blanscett, 450 S.W. 2d 124, 127 (Tex.Civ.App.—El Paso 1969, n. w. h.). We do not rule out the possibility that a C.P.A. firm could be shown to be an agent, but it was not done here. The appellee did not show any right of control of the details of the audit by the Vahlsing Corporation.[1]

---

1. This is not a case where the books of account are themselves in evidence to support the memo as in Shultz v. Resthaven Cemetery, Inc., 375 S.W.2d 493, 499 (Tex.Civ. App.—Houston 1964, n. r. e.). Nor is this the type of case where the memo was prepared by a bookkeeper/agent of the employer as in F. H. Vahlsing, Inc. v. Adames, 360

We have recognized that it was error to admit this exhibit. The question of whether this error demands a reversal depends on whether it was reasonably calculated to cause and probably did cause an improper judgment. Bridges v. City of Richardson, 163 Tex. 292, 354 S. W.2d 366 (1962); Otto v. Otto, 438 S.W. 2d 587 (Tex.Civ.App.—San Antonio 1969, n. w. h.). We believe sufficient evidence exists despite this error 'to support the judgment. Appellant's point of error no. 9 is overruled.

This brings us to the crux of the case, the no evidence and insufficient evidence points of error. Since we have already determined that plaintiff's exhibit no. 7 was erroneously admitted, we will consider these points without regard to that evidence. It is the duty of this court to consider and decide the no evidence point first. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 369 (1960).

We also recognize the often cited rule that in order to pass upon the law question of no evidence, we must consider only the evidence which supports the verdict and consider only the facts and circumstances which tend to sustain it. In addition, we must reject all evidence and inferences to the contrary of the jury finding. Sobel v. Jenkins, 477 S.W.2d 863, 865 (Tex.Sup.1972); Garza v. Alviar, 395 S. W.2d 821, 823 (Tex.Sup.1965); Hammonds v. Roper, 493 S.W.2d 569, 572 (Tex.Civ.App.—Corpus Christi 1973, n. r. e.).

It is our conclusion that there is evidence to support the jury's answer to special issue no. 1. Ryman testified that he told Vahlsing of the per hour charge at their Echo Motel meeting. The majority of the invoices themselves are billed at the

rate quoted at that meeting. This is not as important to the question of the total price as it is to the question of who exactly was in control of this job. This is apparent on the direct examination of Ryman:

"Q. Who is Mr. Bill Sewell?

A. He was their well representative, but not at this meeting. (Echo Motel)

Q. He didn't attend this meeting.

A. No, sir.

Q. Bill Sewell is an employee of Vahlsing Corporate Complex that has its office at Texas Plastics; is that right?

A. Yes sir.

\*    \*    \*    \*    \*    \*

Q. All right. Now, you mentioned the well representative. Who gives the orders about what is to be done with the rig on a drill sight (sic)?

A. Well, if they are working on a contract, or a turnkey job, the owner, or the contractor will, but if it is on an' hourly basis, which we were on, the operator or his representative will.

Q. All Right. Now, the operator is who?

A. Is the man that wants to drill the well, or is drilling or re-entering the well."

The evidence shows Mr. Vahlsing gave the original order to clean out the well. He then gave the order to commence the original set of tests to determine if hydrocarbons were present. After the well had been tested (and no hydro-carbons found) and the cement plugs had been replaced, Mr. Vahlsing ordered a second set of tests of the same sands. Thus, much of the pre-

---

S.W.2d 911 (Tex.Civ.App.—Amarillo 1962, writ ref., n. r. e.). Nor did an accountant testify in open court as to his conclusions after examination of the books as in Moore v.

Moore, 430 S.W.2d 247 (Tex.Civ.App.—Dallas 1968, n. r. e.). All of these forms of testimony would have been admissible.

vious work had to be done over again. Finally, a second set of nitrogen tests was ordered by Mr. Collins, a Vahlsing's well representative. From all of this evidence the jury could properly infer that Vahlsing agreed to pay the price for the work done and that that price was the total of the invoices.

The appellant takes a position in this Court that unless the jury answer can be supported solely on evidence of an agreement to pay $44 per hour, it cannot stand; that unless the appellant orally agreed to pay a per hour price, the judgment is defective; that nowhere can it be shown that $44 per hour was agreed on or that the total hours (at $44 per hour) equals the total of the invoices ($62,594.00). We disagree with this narrow view of the plaintiff's case. The plaintiff pled that the prices in the invoices were agreed upon; that they were reasonable and that the total was due and owing. Ryman does not tie its theory of recovery solely to a single set of facts but rather it shows that three different types of work (clean. out, complete and test, re-test) on the well were asked for and received. This raises an inference of a promise to pay. Appellant's first point of error is overruled.

We now consider appellant's insufficient evidence point, point no. 2. Here, our review is guided by a different principle. In considering an insufficient evidence point the entire record must be considered and such points sustained if the evidence is either factually insufficient to support a finding or if a finding is so contrary to the great weight and preponderance of evidence as to be clearly wrong. Garza v. Alviar, supra; Bell Aerospace Corporation v. Anderson, 478 S.W.2d 191 (Tex.Civ.App.—El Paso 1972, n.r.e.); United Furniture and Appliance Co. v. Johnson, 456 S.W.2d 455 (Tex.Civ.App.—Tyler 1970, n.w.h.).

Appellant offered testimony from three principal sources that the price before him when he accepted Ryman's offer was a single, "turn-key." price for cleaning out the hole and an additional price to complete the well: Mr. Ryman's testimony on cross examination; the letter which several parties initialled at the Monday meeting; Mr. Vahlsing's direct testimony. Nevertheless, plaintiff's evidence concerning extra tests and extra work done is uncontroverted.

Another reason advanced for the cost overrun was the decision to rework the well with drill tubing rather than heavier, more durable (and more expensive) drill pipe. Ryman offered evidence that he explained the choice and the inherent risks involved to Vahlsing's well representative, Mr. Sewell. It was Sewell who then made the arrangements for tubing to be delivered to the drill site. From this, the jury could conclude that Vahlsing made the decision to use the tubing; therefore, it bore the risk of any extra expense, in the light of subsequent events. We have considered all of the evidence and have determined that it is sufficient to sustain the jury's answer to special issue no. 1. The appellant's point of error no. 2 is overruled.

Appellant complains in points nos. 12, 13 and 14 of the jury's award of attorneys' fees in answer to special issue no. 3. This issue reads:

"What do you find from a preponderance of the evidence to be the reasonable value of the services rendered by the attorneys for the Plaintiff, Ryman Well Service, Inc., in pressing this claim?

Answer in Dollars and Cents, if any.

We, the Jury, answer $3,250.00."

Appellant contends that this suit is in the nature of a special contract and, as such, attorneys' fees are not recoverable under Art. 2226, V.A.C.S. This Article was amended in 1971 to allow corporations to recover attorneys' fees in certain specified instances including " . . . suits founded upon a sworn account or accounts . . ." It is apparent from the pleadings, the recitations in the judgment and in

the appellee's brief that this suit was prosecuted as a suit on account. The Texas Supreme Court in Meaders v. Biskamp, supra, 316 S.W.2d at page 78, stated:

" . . . It has been held that a sworn account is defined according to its popular sense and applies only to transactions between persons, in which there is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other, and the relation of debtor and creditor is thereby created . . . It does not mean transactions between parties resting upon special contract."

\*　　\*　　\*　　\*　　\*　　\*

" . . . It has been held that a contract for the drilling of an oil well is not included within the definition of a sworn account . . . "

This same reasoning is likewise a bar to using this statute to recover for the reworking of an abandoned well.

The next question is whether appellee can rely on some other provision (other than sworn account) of Art. 2226 to support recovery. Under the new amended version of this article:

"Any person, corporation, partnership, or other legal entity having a valid claim . . . for services rendered, labor done, . . ."

may recover an additional amount as attorneys' fees. This amended article has been recently construed to allow corporate recovery where before there was none. Maxwell Lumber Co. v. Merle Greer Company, Inc., 501 S.W.2d 454 (Tex.Civ.App. —Tyler 1973, n.w.h.).

But the facts in the case before us arose prior to May 17, 1971, the effective date of the amendment. As a result, we must view this claim as it existed under the law applicable when it arose. See Hundere v. Tracy & Cook, 494 S.W.2d 257, 259 (Tex.Civ. App.—San Antonio 1973, n.r.e.).

Under the prior version of this article, the appellee would be dependent for recovery for the claim for attorneys' fees on *"personal* services rendered" or "labor done". (Emphasis added.) This type of claim was denied for corporations (appellee is a corporation) by the holding in the landmark Supreme Court case of Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814, 820 (Tex.Sup.1970) which was authoritative as to the prior law. Chief Justice Calvert stated:

" . . . It should also be self-evident at this point that a corporation cannot have a claim for 'personal services rendered' or 'labor done' within the meaning of Art. 2226. This holding does not render the statute unconstitutional. The word 'persons' includes 'corporations,' and corporations are just as much entitled to the benefits of Art. 2226 as are individuals. This does not mean, however, that corporations may be the owners of every type of claim mentioned in the statute. They may no more be the owners of claims for personal services rendered and labor done than individuals not selling personal property may have suits based upon sworn accounts."

From what we have said, attorneys' fees were improperly awarded in this case. Appellant's points nos. 12, 13 and 14 are sustained.

Appellant's point of error no. 15 complains of the action of the trial court in awarding interest antecedent to the date of judgment. The judgment was signed and entered on February 27, 1973, yet interest was awarded from January 1, 1972. It is apparent that the trial court made this award in compliance with Art. 5069–1.03, V.A.C.S., which provides for interest "on all open accounts, from the first day of January after same are made." This was erroneous because this was not a suit on account but rather one on a special contract. McDaniel v. National Steam Laundry Co., 112 Tex. 54, 244 S.W. 135,

137 (1922). This is not to say that interest is not recoverable antecedent to the judgment. The well recognized rule in this state is that interest can be allowed antecedent to a judgment as damages for the detention of money. Davidson v. Clearman, 391 S.W.2d 48, 51 (Tex.Sup. 1965); Quinn v. McCurdy, 187 S.W. 2d 595, 597 (Tex.Civ.App.—Fort Worth 1945, ref'd w.o.m.) This rule allows interest as a matter of law where the measure of recovery is fixed by conditions existing at the due date, even though the amount is unascertained and disputed at the time of trial. Hayek v. Western Steel Company, 469 S.W.2d 206, 215 (Tex.Civ. App.—Corpus Christi 1971), aff'd 478 S.W. 2d 786 (Tex).

In the case before us, the amount due, although disputed, was fixed by the invoices. The date when the total amount sought to be recovered became due was 30 days after the final invoice on this job since all the invoices in evidence read "TERMS: 30 days net." The last invoice in evidence is #586 dated May 18, 1971. The result is that the interest as damages should have been computed at the legal rate from 30 days after May 18, 1971. However, the appellee has made no complaint on appeal regarding the date interest should commence. On the contrary, appellee requested that the trial court allow interest from the date of January 1, 1972. This date was made a part of the judgment of the trial court. Therefore, the appellee has waived the interest allowable prior to January 1, 1972. Appellant's point of error no. 15 is overruled.

▮ Point of error no. 10 states that the jury was guilty of misconduct in their deliberations of a type to require a reversal. Three jurors testified at the hearing on the motion for a new trial. There is testimony that the jury foreman made statements concerning personal experiences and views he had concerning the case. The foreman denied making these. When the record shows that the testimony is conflicting as to whether misconduct occurred, the decision of the trial court is binding on appeal. Harlow v. Swift and Company, 491 S.W.2d 472, 476 (Tex.Civ.App.—Eastland 1973, n.r.e.).

▮ There is additional testimony from two of the jurors who dissented from the verdict that they both made and heard statements to the effect that the issues after special issue no. 1 would have to be answered consistently with special issue no. 1 in order to allow recovery for the full amount without reduction. We have addressed ourselves earlier in this opinion to the jury's consideration of the effect of their answers. It follows that even though jurors knew the legal effect of their answers, this does not warrant the inference that they arrived at the verdict in any improper manner. Greiger v. Vega, supra. Although there is testimony of a discussion among individual jurors, there is no testimony of an agreement among them, arrived at before answering the special issues, to reach a preconceived result. Since no agreement was proved, the remarks alone do not warrant reversal for jury misconduct. W. W. Auto Parts, Inc. v. Hyak, 346 S.W.2d 919, 920 (Tex.Civ.App. —San Antonio 1961, n.w.h.). Appellant's point no. 10 is overruled.

We have carefully considered all of appellant's points of error, and with the exception of points nos. 12, 13 and 14 on attorneys' fees which are sustained, all are overruled.

The judgment of the trial court is reformed so as to eliminate therefrom that portion awarding appellee the sum of $3,250.00 as reasonable attorneys' fees for appellee's counsel for the prosecution of this suit, and the judgment as reformed is affirmed.

The judgment of the trial court as reformed is affirmed.