ALPINE GEOPHYSICAL ASSOCIATES, INC., Appellant,

v.

QUANTUM ELECTRONICS CORPORATION, Appellee.

No. B14–82–047CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 1983.

Rehearing Denied May 12, 1983.

Rhett G. Campbell, Morris, Campbell & Seikel, Houston, for appellant.

Danny R. Edwards, Edwards, Bailey & Pruett, Houston, for appellee.

Before PAUL PRESSLER, ROBERTSON and CANNON.

## OPINION

CANNON, Justice.

Our opinion delivered April 7, 1983, is hereby withdrawn and the following opinion is substituted.

This appeal arises from two suits brought as sworn accounts. World Wide Leasing Service (hereinafter cited as World Wide), appellee, sold certain oceanographic seismic and related equipment to Alpine Geophysical Associates, Inc. (hereinafter cited as Alpine), appellant, for which it brought suit on a sworn account. Quantum Electronics Corporation (hereinafter cited as Quantum), appellee, sent technicians to work on the equipment, for which it also brought suit on a sworn account. These two cases were consolidated. Alpine raised various affirmative defenses including, *inter alia,* lack of consideration and breach of warranty. The case was tried to a jury and judgment was entered upon special issues awarding Quantum and World Wide judgment against Alpine. Appellant bases its appeal on fifteen points of error; we find no reversible error and affirm.

The record reflects that on April 12, 1978, appellant ordered from World Wide a Quantum DAS–1A High Resolution Recording System with related equipment for a total purchase price of $113,675.00. This equipment is used to run seismic tests of the ocean bottom for purposes of oil and gas exploration, and it is almost always used on a boat. World Wide brought suit for the amount it claimed was unpaid on the original purchase price, and Quantum brought suit for the amount it claimed was due for services rendered by its technicians on the job site in Italy. Quantum sent two technicians, Johnny Landers and Jim Langley, to Italy to work on the equipment. Landers was present when the equipment arrived in Rome and stayed with the equipment, on board ship, for some time. Langley first arrived a week after Landers, and stayed about three days. He arrived a second time and stayed for two weeks.

During the trial, Langley appeared as a witness, but Landers did not. Dr. Rodolfo Piermattei, technical director of Marine Geophysical, Italy, an Italian subsidiary of Alpine, brought to trial certain notes prepared by Landers that constituted a diary of the alleged problems with the equipment. Piermattei had the original notes with him in court, and although they were offered into evidence, the notes were not admitted.

■ In its first point of error, the appellant complains that the trial court erred in refusing to admit into evidence defendant's exhibits 3, 4, 5, 7, and 8, which are the handwritten notes of Johnny Landers. The notes that were excluded by the trial court reflect the following:

DEFENDANT'S EXHIBIT 3:

1. Transport No. 1 has had bad top tape guide roller.

. . . .

6. Transport door latches have always been faulty.

DEFENDANT'S EXHIBIT 5:

1. Broken wire. . . .

. . . .

3. Test osc does not work in 55 mv & 50 HZ positions. Installed correct resistor on osc switch.

4. Pulse circuit does not work because I.C. missing. from board.

. . . .

5. . . . bad potentiometer. Intermitten bad solder jpints.

6. Bad 74L502 '2C'

.        .        .        .        .

bit slide bad.

7. Record length bad.—74173) replaced.

8. LC Filters don't pull in—74173) replaced.

9. Trip delay inoperative. . . .

10. Amplifiers—

bad DG 200

bad DG 201

bad DG 201 wrong valve res.

11. No plug for control connector.

12. Notch Filters not set . . . .

13. Camera

1. Screw loose on Galvo block

2. Wire for ext timing lines wrong. Xport No. 2 has problems in BOT and EOT circuit.

DEFENDANT'S EXHIBIT 7:

Problems in DAS System when Jim Langley left Brindisi on the 15th day of July, 1978:

1. Light bulb for E.O.T. & B.O.T. circuit intermittenly blinks.

2. There is still some D.C. offset in the DAS system.

3. A drive belt on transport No. 1 is still bad.

4. Space read amplifies still has bad potentiometer.

DEFENDANT'S EXHIBIT 8:

. . . .

21/6—. . . .

Also Langley stated that he would change the tests to pass checks.

. . . .

24/6—A.M. Xport No. 2 does not work.

27/6—. . . .

problems with mps

28/6 . . . trip delay still bad. . . .

6/30—Amplifiers Nos. 2, 3, 4, 6, 12 *do not* have high cut filters working properly. . . .

Aux Amp No. 2 has possible bad DG 210 component No. 721

Aux Amp No. 1—No higher cut filter and law amplitude out. . . .

7/1—continued to run test on system Results:

1. Amplifiers No. 2, 4, 6, 8, 10, 11, Aux Amplifiers Nos. 1, 2 are not calibrated correctly

. . . .

4. High cut filters on amps No. 2, 3, 4, 6, 12, out of phase

7/2 1. Continued to look at problems in DAS system. Same as before.

. . . .

7/7/ Cleaned streamer plugs. Found Amps No. 1 & 11 not tripping properly—cleaned contacts on card.

7/8/—. . . .

Lamp No. 1 problem was thought to be in format module.

. . . .

7/10—Changed F/F 1E on B.G.A. format to cure final gain problem channel.

. . . .

2. Auxiliary amplifer No. 2 had a component to fall which pulled—15v. supply to zero volts.

7/11 . . . .

3. Drive belt on xport No. 1 needs to be changed probably.

4. Amp-aux No. 2—needs to be repaired.

5. Test OSC still noisy

. . . .

7/5 In port . . . . Langley goes back to Hotel & refuses to work on system. Sparker not firing properly. Ceramic core burned.

. . . .

7/17 System still has noisy test panel.

. . . .

The appellant contends that the trial court's exclusion of these notes was reversible error because an adequate foundation for the admission of these notes as vicarious admissions was presented, and that the essense of the vicarious admission is that, as an exception to the prohibition against hearsay, statements of agents are admitted for use against principals. Appellant further argues that these notes directly refute appellees' contention that the equipment was damaged in transit or that the crew did not know how to operate it. The notes appear to support appellant's allegations that the equipment was faulty, dirty, clogged, incorrectly wired, and in many cases had incorrect circuit cards. However, while the notes appear in the record, they should not be there because the appellant never introduced them on his bill of exception. Appellant therefore has not perfected its record. Furthermore, since the jury heard Dr. Piermattei testify at length regarding the defective condition of the equipment and the handwritten notes, any error was rendered harmless. We therefore overrule appellant's first point of error.

In its second point of error, the appellant complains that the trial court erred in refusing to allow Dr. Piermattei to testify to conversations he had with Johnny Landers regarding the defective condition of the equipment. There is no doubt that the conversations between Piermattei and Landers were hearsay. Again, appellant argues that the vicarious admissions exception to the hearsay rule applies. We do not agree because it is the burden of the offering party to prove agency. "Employment, standing alone, does not clothe the employed with the powers of agent." *Vahlsing Christina Corporation v. Ryman Well Service, Inc.,* 512 S.W.2d 803, 812 (Tex.Civ. App.—Corpus Christi 1974, no writ). Appellant's second point of error is overruled.

Appellant's third point of error contends that the trial court erred in allowing Jim Langley to testify regarding a computer printout that was not in evidence regarding the performance of the equipment. The record reflects that Alpine sent its own representatives and experts to examine the equipment and its specifications. We conclude that there is sufficient evidence to support the findings of the jury and the judgment of the court even if the trial court should have disregarded the testimony of Langley regarding the computer run. Therefore, any error was harmless, and appellant's third point of error is overruled.

In its fourth point of error, appellant argues that the trial court erred in allowing hearsay testimony from Jim Langley that the equipment had been damaged in transit. Although appellant contends that the hearsay evidence was of no probative value, no objection was made to the testimony. We hold that because appellant failed to object, it has waived any alleged error and cannot now complain of the testimony having been admitted without objection. Appellant's fourth point of error is overruled because it has failed to preserve its error.

Appellant's points of error five through eleven are concerned with whether or not the services rendered by the techni-

cians sent by Quantum were rendered for Alpine, or for Marine Geophysical, Italy, a subsidiary of Alpine. In its pleadings and otherwise, Alpine has admitted that it seeks to recover damages on behalf of its subsidiary as a result of the actions of the appellees. Appellant's third amended answer pleads and attempts to recover losses on behalf of Marine Geophysical. Apparently, on the one hand, the appellant is trying to say that the appellee Quantum as plaintiff cannot recover against Marine Geophysical because it is not a party to the lawsuit for that purpose but, on the other hand, it is an adequate party to the lawsuit to enable Alpine's subsidiary to recover for losses suffered as a result of Quantum's conduct. Such a contradictory position is untenable. After carefully reviewing the record, we find that there was sufficient evidence for the jury to determine that the services being rendered by Quantum were for Alpine. The appellant had ample opportunity to put forth to both the Court and the jury his theory that the services by the technicians were, in fact, performed for Marine Geophysical instead of Alpine. The record also reflects that the evidence was sufficient to support the court's refusal to grant appellant's motion for an instructed verdict. We are of the opinion that the evidence supports the findings of the jury and the judgment of the trial court that the technicians' services were performed for Alpine and not Marine Geophysical. Appellant's points of error five through eleven are overruled.

■ Appellant's points of error twelve through fourteen deal with references during the trial to the fact that appellees' technicians, after being sent to Italy to work on the equipment in question, were held against their will in Italy. These allegations permeate the record. Appellant's third amended answer, on which it went to trial, contended that the reason the technicians were in Italy so long was by virtue of their inability to properly repair the equipment in question. Paragraph 3 of Defendant's Third Amended Answer reads, in part, as follows:

As a result of the unserviceability of said equipment, it was necessary that Gilbert R. Marine through QUANTUM ELECTRONICS CORPORATION send technicians and servicemen to Italy to work on said equipment and to attempt to place same in working order. *For a long period of time,* said technicians and servicemen worked on said equipment but were unable to place it in working condition. (Emphasis added).

The record reflects that throughout the trial, appellant contended that the reason the service personnel were required to stay in Italy was because of the needed repairs on the equipment. Appellant asserts that there are no pleadings to support this type of evidence. We hold that no pleadings are necessary on matters which are in rebuttal to allegations made by the appellant as a defensive matter. Therefore, appellant's points of error twelve through fourteen are without merit and are overruled.

■ In its last point of error, appellant argues that the trial court erred in refusing to allow Peter Chase to testify regarding the value of the equipment. Chase was present as the Executive Vice President of Alpine. The court refused to allow him to testify to the value of the equipment in the condition it was contracted to be.

As is pointed out in one of the cases cited by Appellant, *Allstate Insurance Company v. Chance,* 590 S.W.2d 703 (Tex.1979), the Texas Supreme Court, citing itself in *Crisp v. Security National Insurance Co.,* 369 S.W.2d 326 (Tex.1963) said as follows:

The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and wellbeing of the owner. In the instance of the former it judges their value by the market price.

To arrive at damages, there must thereby be a determination as to the market value of the equipment when purchased as compared with the market value when attempted to be used. In this instance, Mr. Chase, on a bill of exceptions, admitted that the value would have been $113,675.00 if the equipment had been delivered in the condi-

tion in which it was supposed to have been delivered. The record reflects that Mr. Chase had little or no expertise in the area of the equipment and that he depended upon other parties to evaluate the equipment and that, in fact, he never saw the equipment once it was shipped from Houston. Therefore, he could have no knowledge as to its condition on which to base any value at the time of the delivery. Appellant's fifteenth point of alleged error is overruled.

For the reasons stated, the judgment is affirmed.

Appellant's Motion for Rehearing is denied.