**AUGUSTA DEVELOPMENT COMPANY, Appellant,**

v.

**FISH OIL WELL SERVICING COMPANY, INC. and R.W. Dirks Petrol, Appellees.**

No. 13-87-485-CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 30, 1988.

**540**

Ronald Habitzreiter, Austin, for appellant.

Marion Williams, Jerry Sanchez, Beeville, for appellees.

Before KENNEDY, UTTER and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Appellees, Fish Oil Well Servicing Company, Inc. (Fish Oil) and R.W. Dirks Petroleum Engineer, Inc. (Dirks), sued appellant, Augusta Development Company (Augusta), for amounts due under their respective contracts with Augusta for services rendered and equipment leased in the reentry of an oil well. Augusta counterclaimed against both appellees for violations of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.46 (Vernon 1987), and against appellee Fish Oil for charging usurious interest under Tex Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon 1987). After a bench trial, the court awarded judgment for Fish Oil in the amount of $12,840.55, plus attorney's fees, and for Dirks in the amount of $6,398.09, plus attorney's fees. The trial court denied recovery on Augusta's counterclaims. Augusta brings seven points of error, complaining generally of the trial court's failure to find as a matter of law that the interest rate charged by Fish Oil was usurious, and of the award of full recovery to appellees without deducting certain expenses charged to Augusta which were supposedly caused by Dirks' imprudent procedures on the well site. We affirm the judgment of the trial court.

Augusta originally hired Dirks as the consultant to supervise the reentry of the Barnhart well in May of 1985. Dirks in turn hired Fish Oil to provide the rig and equipment necessary for the job. The Barnhart reentry was a success and the job was completed in August. At the end of August, Augusta hired Fish Oil for a reentry of the O'Neill well, which is the subject of the present suit. Augusta subsequently hired Dirks as consultant on the O'Neill reentry and work was begun in September. Jack Randolph, an employee of Dirks, supervised the O'Neill reentry, directed the day to day operations on the well, and signed daily work tickets for Fish Oil indicating the amounts charged against Augusta and the terms of payment for the lease of Fish Oil equipment and services. The O'Neill reentry was unsuccessful and work terminated in October. In addition, there were added expenses on the O'Neill reentry, due to an instrument called the "sinker bar" getting stuck in a device called the "packer" down in the well and causing the wire line to break, which in turn caused approximately three days delay in the project.

Appellees subsequently billed Augusta for the amounts claimed on the O'Neill well. Augusta payed that amount which it believed it rightfully owed and refused to pay the amount it attributed to the delays resulting from the sinker bar getting stuck in the packer and the line breaking. Appellees brought the present action for the remainder they claim Augusta owes them.

In points of error one through three Augusta complains of Fish Oil's charging of interest on the outstanding balance of the amount Fish Oil claimed was owed. Augusta contends that there was legally and factually insufficient evidence to show that Randolph acted as its agent in signing the work tickets or that Augusta ever contracted to pay 18% interest on the sums due Fish Oil. Augusta thus concludes that the trial court erred in failing to grant it a recovery against Fish Oil under the usury statute for charging interest at more than twice the amount allowed by law. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W. 2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

The usury statute, Tex.Rev.Civ.Stat.Ann. art. 5069–1.01 (Vernon 1987) *et seq.*, provides in pertinent part as follows:

article 5069–1.03 When no specific rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

article 5069–1.04(a) The parties to any written contract may agree to and stipulate for any rate of interest ... that does not exceed [an indicated rate ceiling that is based on United States treasury bills, or] (b) ... 18 percent a year....

article 5069–1.06(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest.... (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest....

Appellees assert that appellant has waived any error related to its usury claims, because it failed to request an additional finding and conclusion that the interest charged by Fish Oil was usurious.

The trial court made the following finding and conclusions relevant to the usury claims:

### Finding.

13. [Augusta] contracted to pay [Fish Oil] interest in the amount of 18% on all

sums due to [Fish Oil] beginning thirty (30) days after the date of the invoice.

### Conclusions.

3. The indebtedness of [Augusta] to [Fish Oil] bears interest at the rate of 18% per annum from October 30, 1985 through August 20, 1987.

9. [Fish Oil] is not indebted to [Augusta], because [Fish Oil] did not violate the usury laws of the State of Texas.

■ A party asserting an independent ground of recovery or an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver. If the findings filed by the trial court do not include any element of the ground of recovery or defense asserted, failure to request additional findings relevant thereto effects a waiver. *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 464–65 (Tex.App.—Dallas 1987, no writ); *Traweek v. Larkin*, 708 S.W.2d 942, 947 (Tex.App.—Tyler 1986, writ ref'd n.r.e.); *Pinnacle Homes, Inc. v. R.C.L. Offshore Engineering Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Elliott v. Bowden*, 564 S.W.2d 825, 828 (Civ.Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.); Tex.R.Civ.P. 299. A blanket conclusion of law that the ground or defense does not apply, moreover, does not relieve the party asserting it of the duty to request findings on the specific elements. *See Elliott*, 564 S.W.2d at 828.

■ In the present case, Augusta's claim of usury arises out of Fish Oil's attempt to collect 18% interest based on the work tickets authorizing the maximum allowed by law. Augusta claims that the work tickets never became part of the agreement between it and Fish Oil, and that, absent any agreement, the maximum rate of interest allowed was 6% under Article 5069–1.03. The trial court's finding that Augusta did contract to pay Fish Oil interest in the amount of 18% negates the application of Article 5069–1.03, since an element of usury under that article is the absence of an agreement to pay a specified rate of interest. Since the trial court's finding negated an element of appellant's ground of recov-

ery, failure to request additional findings did not effect a waiver.

■ We turn now to the substance of appellant's claim of usury. A demand for usurious interest is a violation of the usury statute under Article 5069–1.06, as "charging" usurious interest, even though there is no agreement between the parties for a usurious amount of interest. *Danziger v. San Jacinto Savings Association*, 732 S.W.2d 300, 304 (Tex.1987); *Missouri–Kansas–Texas Railroad Co. v. Fiberglass Insulators*, 707 S.W.2d 943, 949 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A usurious charge may be contained in an invoice, a letter, a ledger sheet or other book or document. The basis of the action is a claim or demand for usury made by the creditor and the vehicle for the claim or demand is immaterial except as an evidentiary fact. *Danziger*, 732 S.W.2d at 304.

■ If the work tickets did not constitute an agreement by Augusta to pay interest, the statutory rate of 6 percent is read into the agreement, and is the maximum amount of interest allowed on the transaction. A party charging more than 6 percent interest under such circumstances is subject to the statutory penalties provided in Article 5069–1.06. *Triton Oil & Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 445 (Tex.1982). A charge of 18% interest, moreover, is more than twice the 6 percent allowed by law and subjects the party to the harsher penalties of subdivision 2. *See Amarillo Equity Investors, Inc. v. Craycroft Lacy Partners*, 654 S.W.2d 28, 30 (Tex.App.—Fort Worth 1983, no writ); *Flato Electric Supply Co. v. Grant*, 620 S.W.2d 915, 917 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ In order for Fish Oil's demand for interest in the present case not to be usurious, the work tickets must constitute valid written agreements to pay interest at 18%. Signed invoices containing stipulations as to interest can evidence a written contract in a usury case. *Bendele v. Tri–County Farmers Co-op*, 635 S.W.2d 459, 466 (Tex. App.—San Antonio 1982) *affirmed in part,*

*vacated in part on other grounds*, 641 S.W.2d 208 (Tex.1982); *Dean Vivian Homes v. Sebera's Plumbing and Appliances, Inc.*, 615 S.W.2d 921, 926 (Tex.Civ. App.—Waco 1981, no writ); *see also Berry v. Pierce Petroleum Corp.*, 120 Tex. 452, 39 S.W.2d 824, 825 (1931); *Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W. 2d 716, 721 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Vahlsing Christina Corp. v. Ryman Well Service, Inc.*, 512 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Fleetwood Construction Co. v. Western Steel Co.*, 510 S.W.2d 161 (Tex.Civ.App.—Corpus Christi 1974, no writ). In the present case, the work tickets specified the amount of interest to be charged and, if they were signed under the authority of Augusta, constitute a written contract between Fish Oil and Augusta.

Augusta, however, contends that Fish Oil should not be allowed to assert the agreement as a defense to usury, because Fish Oil failed to bring the agreement into issue properly by its pleadings. Fish Oil supposedly lost the right to assert the agreement as a defense to usury by its failure to plead in reply to Augusta's counterclaim both the agreement itself and the authority of Randolph to make the agreement on behalf of Augusta.

■ However, an unplead issue is tried by implied consent when evidence upon the extrinsic issue is developed under circumstances making clear that the parties understood that the issue was in the case, and without either party having objected to the evidence. *See Wendell v. Central Power and Light Co.*, 677 S.W.2d 610, 618 (Tex. App.—Corpus Christi 1984, writ ref'd n.r. e.); *Whitley v. Whitley*, 566 S.W.2d 660, 662 (Tex.Civ.App.—Beaumont 1978, no writ); *Willeford v. Walker*, 499 S.W.2d 190, 193 (Tex.Civ.App.—Corpus Christi 1973, no writ); 2 McDonald, Texas Civil Practice § 5.18 (1970).

■ Fish Oil presented testimony at trial tending to show that Randolph was authorized to make contracts on behalf of Augusta and that he agreed in written job tickets that Augusta would pay interest on the amount owed Fish Oil at the highest legal rate. This evidence shows that Fish Oil relied on the job tickets as a contract to establish its right to claim 18% interest on the amount due from Augusta and on Randolph's authority as an agent of Augusta to bind it to the agreement for interest. Augusta's failure to object to his testimony clearly waived any objection to Fish Oil's reliance on the agreement as a defense to usury.

The final question is whether there was sufficient evidence to show that Randolph had the authority as an agent to bind Augusta to the terms of the written job tickets.

■ An "agent" is one who is authorized by another to transact business or manage some affair for him. *Neeley v. Intercity Management Corp.*, 732 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1987, no writ); *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App.—Corpus Christi 1984, no writ). The agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances. *Jorgensen*, 676 S.W.2d at 194; *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 20 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.); *see also Blackmon & Associates, Inc. v. Cooper*, 445 S.W.2d 577, 580–81 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.).

■ An agent has the implied authority to do all things proper, usual and necessary to accomplish the purpose for which the agency was created. *Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 334 (Tex.App.—Austin 1984, no writ); *Employers Casualty Co. v. Winslow*, 356 S.W.2d 160, 168 (Tex.Civ.App.— El Paso 1962, writ ref'd n.r.e.); *Houston Packing Co. v. Spivey*, 333 S.W.2d 423, 426 (Tex.Civ.App.—Eastland 1960, no writ). This authority is presumed to be co-extensive with the business entrusted to his care. It includes such contracts and acts as are incident to the management of the particular business with which he is en-

trusted. *Longoria v. Atlantic Gulf Enterprises, Inc.*, 572 S.W.2d 71, 77 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Jarbe Oil Co. v. Birdwell & Son Drilling Co.*, 335 S.W.2d 394, 396 (Tex.Civ.App.—Eastland 1960, writ ref'd n.r.e.).

■ Generally, a supervisor on the site of a construction project or an oil well is considered the agent of the owner or developer and has the implied authority to bind him in contracts necessary for the completion of the project. *Fleetwood*, 510 S.W.2d at 164; *Union Producing Co. v. Allen*, 297 S.W.2d 867, 871 (Tex.Civ.App.—Beaumont 1957, no writ); *see also Vahlsing*, 512 S.W.2d at 810.

■ In the present case, Augusta hired Dirks to act as consultant and supervise the reentry of the O'Neill well. R.W. Dirks, the president of Dirks, testified that Randolph, though he may have been an independent contractor rather than an employee, acted as Dirks' agent on the well site and had authority from Dirks to supervise the reentry and to hire and fire contractors on behalf of Dirks. *See Jorgensen*, 676 S.W.2d at 194; *Maynard Hill, Inc. v. Smith*, 534 S.W.2d 733, 736 (Tex. Civ.App.—Waco 1976, no writ). Randolph's testimony indicates Donn Wagner, president of Augusta, understood that Randolph was the supervisor at the well site, but told him only where the well was and generally what he wanted done with it, that Wagner was on site about half the time, and that Wagner explicitly gave Randolph the authority on the O'Neill well to hire either Fish Oil or some other contractor to supply the swabbing unit, a piece of oil field machinery necessary for the reentry. Robert Fish, president of Fish Oil, testified that Randolph took care of the day to day activities on the O'Neill well site, and that he gave orders to the Fish Oil employees in the conduct of operations on the site.

In addition, customary practice and prior dealings among the same three parties the month before on the Barnhart well suggest that Augusta intended Dirks, and Randolph as Dirks' agent, to have broad powers on behalf of Augusta. Mr. Dirks testified that on the Barnhart well he hired and negotiated the price with Fish Oil on behalf of Augusta. He also testified from his many years of experience as a consultant on wells in the area that it was customary practice for the consultant to employ the rig contractor and to assume the position of the operator when he is not on the well site.

Under the circumstances of this case, Randolph's position as supervisor on the well site implies that he had the authority to contract for necessary materials and services on behalf of Augusta. Fish Oil's employment on the O'Neill well had already been orally agreed to by Fish and Wagner, and the specific terms of payment agreed to were the "normal terms." We hold that Randolph, as supervisor on the well site, had the implied authority to contract on behalf of Augusta for normal rates of interest in order to secure Fish Oil's materials and services at the well site.

Since the evidence was sufficient to show that Randolph had the authority to sign the work tickets on behalf of Augusta, the work tickets formed a valid written portion of the contract between Fish Oil and Augusta and authorized Fish Oil's charging of 18% interest on the amounts Augusta owed.

■ Finally, Augusta points to one lone work ticket for September 18, 1985, that does not bear Randolph's signature. Augusta contends that, even if all the other work tickets are construed as written contracts, this one should not be so construed, and the amount owed thereunder can not legally bear interest above 6%. However, in order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties, so long as the party not signing accepts the contract by his acts, conduct or acquiescence. *Hercules Exploration, Inc. v. Halliburton Co.*, 658 S.W.2d 716, 721 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Macpet v. Oil Field Maintenance Co.*, 538 S.W.2d 240, 242 (Tex.Civ.App.—Corpus Christi 1976, no writ). The evidence clearly indicates that Randolph, on behalf of Augusta, accepted the terms on Fish Oil's work tickets for its

services generally, even if he missed signing one of the daily work tickets. Points one through three are overruled.

In its fourth through seventh points of error appellant challenges both the legal and factual sufficiency of the evidence to support the awards to appellees of the amounts they claimed were owed by Augusta for services rendered in connection with the O'Neill well, and the court's failure to award appellant contribution from Dirks, based on Dirks' negligence. Specifically, appellant claims that the procedure Dirks used of dropping the sinker bar through the packer to find the bottom of the well was unauthorized and imprudent, and the cost of correcting the damage done should not have been charged against Augusta.

 Contracts for services rendered require the party seeking payment to prove the justness of his claim by showing either that the charges are based on an agreement between the parties or, in the absence of an agreement as to price, that the charges are usual, customary and reasonable. *Vahlsing Christina Corp. v. Ryman Well Service, Inc.*, 512 S.W.2d 803, 809 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

 In the present case, both Fish and R.W. Dirks testified that they contracted with Augusta to provide their services on the O'Neill well, that their services were carried out in a prudent and workmanlike manner, and that their charges were reasonable and customary for the type of services rendered. This is sufficient evidence to prove the justness of their claims.

Augusta contends, however, that those claims should be reduced by the amounts attributable to the procedure used by Randolph to tag the bottom of the well with the sinker bar. The problem first arose when the well failed to produce oil or gas after it had been reopened and swabbed. Randolph decided to check for the possibility of an obstruction by lowering the sinker bar through the packer to tag the bottom of the well. Employees of Fish Oil who were on the site advised Randolph not to drop the sinker bar through the packer. Randolph, however, decided to do it anyway.

According to Randolph, after the sinker bar had been lowered through the packer to tag bottom and was being pulled back up to the point that he mistakenly thought it had already passed through the packer, he left the drillers to retrieve the line on their own and went to the bunkhouse, some eighty feet from the well. According to Robert Moya, an employee of Fish Oil, Randolph was observing the procedure at the time the sinker bar got caught in the packer and personally instructed the drillers to try to work the line loose. Regardless of whether Randolph was directly observing the well at the time, when the line did finally pass through the packer, it got stuck and broke. This problem took 73½ hours to correct, causing the expenses of which appellant complains.

 Generally, on-site determination about how to deal with problems in the well are within the discretion of the consultant or supervisor if they are reasonable and the work is conducted in a good and workmanlike manner, and it is the operator's responsibility to pay for the costs of using such procedures. *See Vahlsing*, 512 S.W. 2d at 814; *Fleetwood*, 510 S.W.2d at 164. However, where the services or material furnished under a contract are defective due to the negligence or fault of the party contracting to furnish them, the other party to the contract should be allowed an off-set against the amount due under the contract, for repairing the damages caused by the defect. *See C.H. Leavell & Co. v. Vilbig Bros., Inc.*, 160 Tex. 600, 335 S.W.2d 211, 215 (1960); *Graham Construction Co. v. Robert H. Pyle, Inc.*, 422 S.W.2d 485, 488 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

 Testimony was elicited both condemning and upholding the procedure used by Randolph to check the well for obstruction. Oran De Spain, Jr., a drilling and production superintendent, testified that he would not recommend that procedure because of the risk of getting stuck in the packer. Robert Sego, a driller for Fish Oil,

testified that dropping a sinker bar through the packer in order to find an obstruction is a risky operation. Jon Fischer, an employee of Dirks, testified that he did not like that procedure, but he did not think that it was imprudent or negligent.

Jack Randolph himself testified that he had supervised approximately 200 wells, and had performed the sinker bar procedure some dozen times before, without incident. R.W. Dirks, a chemical engineer with nearly 40 years experience in the oil business, testified that the procedures used on the O'Neill well were normal, customary and workmanlike, and that, when a sinker bar gets stuck, the prudent operator first tries to work it loose by pulling on it, slacking off, and trying to shake it loose. Fred Jennings, who has a degree in Petroleum Land Management and has worked as an operator on some 150 wells, testified that dropping a sinker bar through the packer to see if the well is obstructed is a proper procedure which he has used on a number of occasions himself. He further testified that there are other procedures to determine if a well is obstructed, but that this is the cheapest and is a reasonable risk in view of the costs of the other procedures.

The evidence is sufficient to support the trial court's findings. Appellant's fourth through seventh points of error are overruled.

The judgment of the trial court is affirmed.