Samuel Joseph **LABARBERA**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. B14–91–00650–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 6, 1992.

Michael O'Conner, Bryan, for appellant.

John R. Duer, Bryan, for appellee.

Before MURPHY, ROBERTSON and CANNON, JJ.

## MAJORITY OPINION

CANNON, Justice.

Appellant entered a plea of not guilty before a jury to the misdemeanor offense of theft of services of the value of $200.00 but less than $750.00. TEX. PENAL CODE ANN. § 31.04(a)(3), (e)(3). He was convicted of the lesser-included offense of theft of services of the value of $20.00 but less than $200.00 and the jury assessed punishment at confinement in the county jail for 180 days, plus a fine of $1,000.00. Appellant raises two points of error, complaining that the trial court erred in admitting extraneous offenses at the punishment stage and in denying his motion for instructed verdict. We affirm.

On August 8, 1990, appellant went to the U–Rent–M store in College Station, Texas, and rented a typewriter. Appellant was assisted by store employee Don Gordon. Because appellant did not have his driver's license, employee Michael Matcek was asked to "okay" the transaction. Matcek was unable to oblige and referred the matter to manager Charles Mancuso. After appellant said that his family was friends with or related to the owner's family, Mancuso approved the transaction.

The pre-printed, written, rental form contains, among other items, appellant's name, an address, a date of birth, a driver's license number, and a telephone number. The rental rate for the IBM Selectric III rented by appellant was $15.00 a day. Appellant paid a total of $16.16 including tax, which is reflected on the rental form. It is undisputed that the rental form does not bear appellant's signature or specify a rental period. Mancuso, however, was of the opinion that the typewriter was to be returned the next day. Approximately a week after the rental date, Mancuso spoke by telephone with appellant's mother, who disclosed appellant's phone number. Several days later, Mancuso telephoned appellant and asked him to return the typewrit-

er. Appellant agreed to do so but never did. Two certified demand letters were sent to the address listed on the rental form. It is uncertain whether appellant received those letters because the return receipts show only the signature of Sam Labarbera, which is also the name of appellant's father. The typewriter was not returned to the store until some forty days after the rental date, when appellant was arrested and the typewriter was recovered by police from a third party.

▆ In his first point of error, appellant contends that the trial court erred in admitting State's Exhibit 5, a pen packet, which contained an order revoking appellant's probation. Specifically, appellant complains that the order contains evidence of unadjudicated extraneous offenses.

Initially, we note that the order revoking appellant's probation is not, as the State contends, the result of an adjudication of the conduct alleged therein. *See Cross v. State*, 586 S.W.2d 478, 481 (Tex.Crim.App. 1979) (probation revocation proceedings administrative in nature where violation of probation conditions proved only by preponderance of evidence and revocation of probation not a conviction for purposes of impeachment).

Article 37.07, section 3(a), of the Code of Criminal Procedure, as amended, provides in pertinent part:

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation, and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial or any final conviction material to the offense charged.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1992).

This Court, in construing article 37.07, has held that evidence of an extraneous offense is admissible at the punishment stage of a trial where the evidence is relevant to sentencing under the Rules of Evidence. *McMillian v. State*, 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, pet. granted) (opin. on reh'g), *see also Zayas v. State*, 814 S.W.2d 509, 511 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Cannon v. State*, 807 S.W.2d 631, 635 (Tex. App.—Houston [14th Dist.] 1991, no pet.). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. Of course, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." TEX.R.CRIM.EVID. 403.

The revocation order contained in the pen packet reflects that appellant violated his probation by allegedly committing an offense against the laws of this State. Of the six offenses cited in the order, five were misdemeanor theft offenses. Here, appellant was found guilty of misdemeanor theft of services. Undoubtedly, the evidence of prior theft offenses allegedly committed by appellant was relevant to the jury's consideration of punishment. *See Slott v. State*, 824 S.W.2d 225, 226–27 (Tex. App.—Beaumont 1992, pet. pending); *Holland v. State*, 820 S.W.2d 221, 223–24 (Tex. App.—Fort Worth 1991, pet. pending); *Rexford v. State*, 818 S.W.2d 494, 496–97 (Tex.App.—Houston [1st Dist.] 1991, pet ref'd), 823 S.W.2d 296 (Tex.Crim.App.1991); *Hubbard v. State*, 809 S.W.2d 316, 319–20 (Tex.App.—Fort Worth 1991, pet. granted); *Gallardo v. State*, 809 S.W.2d 540, 543 (Tex.App.—San Antonio 1991, pet. granted); *Huggins v. State*, 795 S.W.2d 909, 911 (Tex.App.—Beaumont 1990, pet. ref'd). We conclude that it was not error for the trial court to admit the pen packet during punishment. We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the trial court erred in denying his motion for instructed verdict because there was insufficient evidence of a written rental agreement or of a rental period.

■ A challenge to the trial court's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). In reviewing the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). This standard applies to both direct and circumstantial evidence cases. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984). "A reviewing court ... faced with a record of historical facts that support conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 845–46 (Tex.Crim.App.1991); *Farris v. State*, 819 S.W.2d 490, 495 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992) (quoting *Jackson v. Virginia*, 443 U.S. at 326, 99 S.Ct. at 2792–93).

The indictment tracks the language of section 31.04(a)(3) of the Penal Code. That section provides:

(a) A person commits theft of service if, with intent to avoid payment for service he knows is provided only for compensation:

(3) having control of personal property under a written rental agreement, he holds the property beyond the expiration of the rental period without the effective consent of the owner thereby depriving the owner of the property of its use in further rentals.

■ In the absence of his signature or a specified rental period on the rental form, appellant contends that there is no written rental agreement and that he did not possess the property "beyond the expiration of the rental period." In order to constitute a "contract in writing," a writing does not necessarily have to be signed by both parties, so long as the party not signing the contract accepts the contract by his acts, conduct or acquiescence. *Augusta Dev. Co. v. Fish Oil Well Servicing Co., Inc.*, 761 S.W.2d 538, 544 (Tex.App.—Corpus Christi 1988, no writ). Since appellant paid money and took possession of the typewriter, we conclude that the absence of appellant's signature is not fatal to the existence of an agreement.

We likewise agree with the State that the rental period need not be specified in the agreement but may be inferred from the circumstances of the transaction. The State relies primarily on the testimony of Mancuso and Matcek. While both men had limited involvement with the transaction in question, both were of the opinion that appellant agreed to rent the typewriter for a period of one day. That opinion, according to Mancuso and Matcek, is based on the unsigned rental agreement which shows that appellant prepaid rent for only one day and took possession of the typewriter along with a copy of the agreement. According to Mancuso, the weekly rate for the typewriter was $45.00.

Mancuso and Matcek acknowledged that they did not tell appellant that the typewriter was due the next day and did not call appellant the following day when it was allegedly overdue. In fact, Mancuso admitted that without a specified rental period, appellant could reasonably have assumed that he would be charged $15.00 per day for as long he kept the typewriter. Mancuso testified, however, that some two weeks after the rental, he personally requested appellant to return the typewriter. Thus, even if appellant did not know that he was to return the typewriter the following day, he was on notice two weeks later that the typewriter was overdue. Appel-

lant never voluntarily returned the typewriter.

■ As factfinder, the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). Further, once the trier of fact has made its decision assessing and weighing the probative value of the evidence in its determination of guilt or innocence, an appellate court does not have the power to step in and reevaluate the probity of an individual item of evidence in its review of the sufficiency of the evidence to support the verdict. *Fernandez v. State*, 805 S.W.2d 451, 456 (Tex.Crim.App.1991). An appellate court has only the discretion to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt. *Id.* Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Accordingly, we overrule appellant's second point of error and affirm the judgment of the trial court.

ROBERTSON, Justice, concurring.

I concur in the majority opinion but add the following facts, as shown by the record, to the disposition of appellant's first point of error. State's Exhibit No. 5, the penitentiary packet, was offered into evidence to show that appellant had been previously convicted of the offense of unauthorized use of a motor vehicle in the 272nd District Court of Brazos County. The judgment shows that on February 18, 1986, appellant entered a plea of guilty to that offense, a finding of guilt was deferred and appellant was placed on probation for a period of four years under the provisions authorizing deferred adjudication. Thereafter, on March 25, 1988, the state filed a motion to proceed with adjudication. On July 20, 1988, a hearing was held on the motion and the court granted the state's motion, and assessed appellant's punishment at confinement for ten years

and a fine of $1,000, but the confinement portion of the sentence was suspended and appellant was placed on probation, based upon certain conditions, including intensive supervision.

On February 20, 1989, the state filed a motion to revoke probation and on March 20, 1989, the trial court, after hearing evidence, revoked appellant's probation finding in detail the following offenses and acts committed by appellant all in violation of the terms of his probation:

(1) on November 23, 1988 the offense of misdemeanor theft;

(2) on December 15, 16 and 17, 1988, the offenses of securing performance of services by deception;

(3) on December 2, 1988, the offense of misdemeanor theft;

(4) on December 7, 1988, the offense of forgery;

(5) on October 17, 1988, the offense of securing performance of services by deception;

(6) failure to pay probation supervisory fees for the months of August, September, October, November and December 1988 and January and February 1989;

(7) failure to pay court costs of $67.00 within 90 days of July 20, 1988;

(8) failure to make restitution payment of $30.00 for the month of February, 1989;

(9) failure to report to the probation officer for specific days (totalling some 11 times) during the months of August 1989 through January 1989.

When the state offered the penitentiary packet into evidence, appellant objected to the judgment revoking probation because all of the grounds, recited above, were "extraneous offense[s] which would be prejudicial to Mr. Labarbera on the issue of punishment" because they "have not been adjudicated," and therefore "the jury has [no] right to consider [such conduct] on the issue of punishment." The state then offered to remove from the judgment revoking probation the various factual findings upon which the probation was revoked, but appellant then objected "to altering or replacing or anything, an original document that's being offered as a certified record."

Under these circumstances, the trial court could not have erred in admitting the certified copy of the judgment. It is clear to me that appellant was only playing games with the judicial system, and he could not have it both ways. The certified copy of the judgment was admissible. The prosecutor offered and the trial judge agreed to delete that portion of the judgment appellant found objectionable, but appellant even objected to that.

Additionally it should be pointed out, however, that three more judgments of conviction against appellant for the offenses of theft were proven at the punishment phase of the trial.

With these additional comments, I concur in the judgment.

MURPHY, Justice, dissenting.

I respectfully dissent. Plainly, section 31.04(a)(3) requires a written rental agreement specifying a rental period. The alleged written rental agreement in this case is merely a pre-printed rental form which does not contain the signature of appellant or specify a rental period. The State contends that a rental agreement may be inferred, as in civil cases, from the circumstances of the transaction. In fact, the State requested that the "agreement" be defined in the charge in accordance with the language of TEX.BUS. & COM.CODE ANN. § 1.201(3). The trial court, observing that section 31.04(a)(3) requires a *written* agreement, properly declined the State's request. Likewise, I would decline to lessen the State's burden under the statute. Significantly, the majority ignores the fact that the rental form itself states that "this instrument expresses the entire agreement of the parties." In the absence of a signed written rental agreement specifying a rental period, I would hold that proof of the essential elements of the crime is lacking.

Even if it were proper to infer the existence of a rental agreement, the evidence does not raise such an inference. As the majority notes, the State relied on the testimony of Mancuso and Matcek. According to Mancuso and Matcek, appellant agreed to rent the typewriter for a period of one day since he pre-paid rent for only one day and took possession of the typewriter. Both Mancuso and Matcek, however, had limited involvement with the transaction in question and were not privy to any communications between appellant and Don Gordon, who actually waited on appellant.

While I agree with the majority that the absence of appellant's signature on the rental form is not fatal to the enforceability of an alleged rental agreement, I find that the absence of a specified rental period is fatal. A contract is unenforceable if it lacks an essential term. *Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 284 (Tex.App.—El Paso 1991, no writ); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). Obviously, a rental period is an essential term to any rental agreement. Other than the opinion of Mancuso and Matcek, there is no evidence that money paid by appellant was for the full rental period charges rather than being merely a deposit, with the remainder of the charges due when the typewriter was returned. As the majority points out, Mancuso testified that at the time of the transaction, he did not tell appellant that the typewriter was due the next day and did not call appellant the following day when it was allegedly overdue. The majority also observes that Mancuso admitted that without a specified rental period, appellant could reasonably have assumed that he would be charged $15.00 per day for as long he kept the typewriter.

While Mancuso testified that he personally requested appellant to return the typewriter some two weeks after the transaction, he admitted that appellant never communicated that he knew of the date that the typewriter was due or whether it was in fact overdue. Although two certified demand letters were sent to the address listed on the rental form, it is uncertain whether appellant received those letters because the return receipts show only the signature of Sam Labarbera, which is also the name of appellant's father. Even if appellant did not voluntarily return the typewriter after learning after-the-fact of

the due date, he still would not have been in violation of any agreement. Parties may agree upon the terms of a contract and understand them to be an agreement, and yet leave other portions of an agreement to be made later. *Foreca, S.A. v. GRD Dev. Co. Inc.,* 758 S.W.2d 744, 746 (Tex.1988); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555 (Tex.1972). Parties cannot, however, enforce a contract that leaves any essential term open for future negotiation. *See Bank of El Paso,* 809 S.W.2d at 285.

Appellant's failure to voluntarily return the typewriter after he was requested to do so does not establish a rental period under the alleged agreement but goes only to whether appellant possessed the intent to avoid payment. TEX. PENAL CODE ANN. § 31.04(b)(2). Finally, Matcek testified that he usually told customers to return rented items the next day but did not do so here because he did not handle the transaction. Matcek testified that he never personally attempted to contact appellant other than by sending the certified demand letters.

While the facts in the instant case may well have supported a conviction under the general theft statute, TEX. PENAL CODE ANN. § 31.03, under the theft of services statute the State was required to prove the existence of a written rental agreement for a definite rental period. Based upon a thorough review of the record, I find that the State failed to establish beyond a reasonable doubt the existence of a written rental agreement or rental period and that the trial court erred in refusing to grant an instructed verdict. Accordingly, I would sustain appellant's second point of error and reverse the judgment of the trial court and render a judgment of acquittal.