State v. Smith 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-582-CV





THE STATE OF TEXAS,




 APPELLANT


vs.





JEROME N. SMITH,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 495,147, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 The State of Texas, appellant, filed suit against Jerome N. Smith, appellee, Rex
F. Gallaway, and Pirates Pub, a Texas General Partnership (the "Partnership"), (1) to recover
payment of employment taxes and penalties owed to the Texas Employment Commission ("TEC"). 
Following a bench trial, the court rendered judgment that the State recover $1,802.15 in taxes and
penalties from the Partnership and Gallaway. The court determined, however, that Smith was not
liable to the State because he was not a partner in the Partnership. In two points of error, the
State raises legal and factual sufficiency arguments challenging the trial court's findings and
conclusions regarding Smith's liability. We will affirm the trial court's judgment.



BACKGROUND


 The Partnership owned and operated a bar and restaurant in Dallas called Pirates
Pub (the "Pub"). The Pub operated for approximately nine months during 1987. Gallaway and
Eric Lenington were principals in the business. (2) Smith also participated in business operations
both before and after the Pub's opening. Before the Pub opened, Smith signed documents
applying for a mixed-beverage permit on behalf of the Partnership and signed as a tenant on a
lease agreement covering the Pub premises. Afterwards, Smith signed various reports submitted
to the TEC relating to the business operations of the Pub.

 In December 1990 the State filed suit against the Partnership, Gallaway, and Smith
to recover employment taxes and penalties owed to the TEC. Smith claimed at trial that he was
an employee, not a partner in the Partnership, and, therefore, was not liable for any amounts
owed by the Partnership to the TEC. In its findings of fact and conclusions of law, the trial court
found that Smith was not a partner and concluded that he was not indebted to the State for the
amount owing.


LEGAL SUFFICIENCY OF THE EVIDENCE


 In its first point of error, the State asserts that the evidence is legally insufficient
to support the trial court's finding that Smith was not a partner in the Partnership. The sole basis
for this argument is the State's contention that Smith's liability was conclusively demonstrated
under the theory of "partner by estoppel."

1. Waiver

 We conclude the State has waived the partner-by-estoppel ground of recovery. The
partner-by-estoppel theory has been codified in the Texas Uniform Partnership Act:


(1) When a person, by words spoken or written or by conduct, represents himself,
or consents to another representing him to any one, as a partner in an existing
partnership or with one or more persons not actual partners, he is liable to any
such person to whom such representation has been made, who has, on the faith of
such representation, given credit to the actual or apparent partnership, and if he has
made such representation or consented to its being made in a public manner he is
liable to such person, whether the representation has or has not been made or
communicated to such a person so giving credit by or with the knowledge of the
apparent partner making the representation or consenting to its being made:


(a) When a partnership liability results, he is liable as though he were an actual
member of the partnership . . . .



Tex. Rev. Civ. Stat. Ann. art. 6132b §, 16 (West 1970).

 Thus, being an actual partner in a partnership is not required. Rather, only two
elements must be established for a finding of partner-by-estoppel: "(1) representation that the one
sought to be bound is a member of a partnership [and] (2) reliance by one to whom the
representation is made by giving credit to the partnership." Paramount Petroleum Corp. v. Taylor
Rental Ctr., 712 S.W.2d 534, 537 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.)
(emphasis added).

 We conclude, for two reasons, that the State waived the partner-by-estoppel ground
of recovery. First, the State did not plead the partner-by-estoppel theory, either by specifically
pleading the statute or by generally pleading that independent ground of recovery. Theories and
grounds of recovery that are not pleaded are waived unless tried by consent. Purselley Indus.,
Inc. v. Engle, 717 S.W.2d 662, 664 (Tex. App.Tyler 1986, writ ref'd n.r.e.); Crozier v. Horne
Children Maint. & Educ. Trust, 597 S.W.2d 418, 421 (Tex. Civ. App.San Antonio 1980, writ
ref'd n.r.e.); see also Tex. R. Civ. P. 301. Moreover, from our review of the record, it does not
appear that this is one of the "exceptional case[s] where it clearly appears from the record as a
whole that the parties tried the unpleaded issue." Ranger Ins. Co. v. Robertson, 707 S.W.2d 135,
142 (Tex. App.Austin 1986, writ ref'd n.r.e.). Second, even if the partner-by-estoppel ground
of recovery had been pleaded or tried by consent, the trial court did not make any findings of fact
relating to that theory; the court merely found in general terms that Smith was not a partner in the
Partnership. The State did not request the trial court to make additional findings of fact regarding
the partner-by-estoppel theory; accordingly, the State waived that ground of recovery. See, e.g.,
Augusta Dev. Co. v. Fish Oil Well Servicing Co., 761 S.W.2d 538, 542 (Tex. App.Corpus
Christi 1988, no writ).


2. Legal Sufficiency of Evidence

 Even if the State had not waived the partner-by-estoppel ground of recovery, the
evidence does not conclusively establish that Smith is liable under that theory.

 The standard for reviewing the sufficiency of the evidence to support a negative
fact-finding by the court is identical to the standard for reviewing a jury's negative finding (more
accurately described as a "non-finding"). Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991). We must first consider only the evidence and inferences tending to support the
finding of the trier of fact, disregarding all evidence and inferences to the contrary. If there is no
evidence that affirmatively supports the finding, we must examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O. R.R.
v. Burden, 203 S.W.2d 522, 528-31 (Tex. 1947).

 Thus, to prevail on its first point of error, the State must demonstrate (1) that there
is no evidence to support a finding that Smith was not liable under a partner-by-estoppel theory;
and (2) that the evidence conclusively established Smith's liability under such theory.

 In considering the first element (representation), we must determine whether there
was any evidence that Smith did not represent himself as a partner to the TEC. We conclude there
was. At trial, the State submitted into evidence a TEC status report that appeared to indicate
Smith had signed as a partner on behalf of the Partnership. Smith signed the report, and his
signature appears next to the word "partner." Smith testified, however, that "I didn't put [the
word `partner'] there," that the printed word "partner" was not in his handwriting, and that he
had no idea who inserted the word on the form.

 The State also submitted into evidence quarterly reports the Partnership provided
to the TEC. These reports do not have Smith listed as an employee. However, Smith testified
that he was not listed because he was never paid with funds listed on the payroll reports submitted
to the TEC. Phillip Speicer, the accountant who prepared the reports, also testified that Smith
was considered an employee, but was classified as subcontract labor and, therefore, was not listed
on the TEC reports. We conclude that Smith's and Speicer's testimony constitutes some evidence
that Smith did not represent himself as a partner to the TEC. At a minimum, such testimony
prevents the evidence from conclusively showing that Smith did represent himself as a partner.

 In considering the second element (reliance), the question is whether there is any
evidence that, in giving credit to the Partnership, the TEC did not rely on any representation that
Smith was a partner. We conclude there was. The State contends that it relied on the
representation contained in the TEC status report submitted by the Partnership in establishing the
Partnership's TEC tax account. However, the status report only requires that the form be signed
by the "owner, officer, partner, or authorized representative" (emphasis added). Thus, the TEC's
own form does not require that the document be signed by a party upon whom tax liability may
be imposed, e.g., a partner. As a result, had Smith signed the status report as authorized
representative, e.g., manager, the TEC would have established the tax account anyway. 
Accordingly, the fact that an authorized representative other than a partner may sign the status
report initiating the creation of a TEC tax account raises a reasonable inference that, in
establishing the tax account, the TEC did not rely on any representation that Smith was a partner.

 The State also contends that Smith represented himself as a partner "in a public
manner" and, therefore, pursuant to article 6132b, section 16, liability may be imposed by virtue
of his public representation. Considering the element of public representation, the State submitted
into evidence several documents provided to the Texas Alcoholic Beverage Commission
("TABC") in which Smith signed as a partner of the Partnership, as well as a lease agreement
executed by Smith and Gallaway as tenants of the Pub premises. We will assume without deciding
that these documents constitute evidence of public representations. Nonetheless, considering the
element of reliance, there is no indication that the TEC was aware of these documents submitted
to the TABC when the TEC established the tax account. Under the partner-by-estoppel statute,
even a public representation must be communicated to the person giving credit and such person
must give credit on the faith of such public representation. There is no evidence that anyone
informed the TEC of Smith's public representations; therefore, there is no evidence that the TEC
relied on any such public representations. Accordingly, we conclude the State failed to
conclusively prove that it relied on Smith's public representations in extending credit to the
Partnership.

 We overrule the State's first point of error.



FACTUAL SUFFICIENCY OF THE EVIDENCE


 In its second point of error, the State complains that the trial court's general finding
that Smith was not a partner was against the great weight and preponderance of the evidence. In
this point of error, the State does not rely on the partner-by-estoppel theory.

 The standard of review for deciding a factual-sufficiency point of error is well
established. The court must consider and weigh all the evidence and should set aside the judgment
only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660,
661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986).

 "A partnership is an association of two or more persons to carry on as co-owners
a business for profit." Tex. Rev. Civ. Stat. Ann. art. 6132b, § 6(1) (West 1970). This
relationship must be based on an agreement between the parties that is either express or implied. 
Coastal Plains Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex. 1978); City of Corpus
Christi v. Bayfront Assocs., Ltd., 814 S.W.2d 98, 107 (Tex. App.--Corpus Christi 1991, writ
denied). Because there is no express agreement to form a partnership under the facts of this case,
the agreement must be implied from the relationship of the parties. The essential elements of an
implied partnership are: (1) agreement to share net profits; (2) agreement to share net losses; (3)
mutual right of control or management; and (4) community of interest in the venture. Further,
an important, although not essential, element is the intention of the parties to form a partnership. 
Coastal Plains, 572 S.W.2d at 287; City of Corpus Christi, 814 S.W.2d at 107-08. The State
claims that all five elements are present under the facts of this case. We disagree.

 First, the State claims that evidence was presented demonstrating an agreement to
share net profits. The State argues that evidence demonstrating that Smith was not listed as an
employee on TEC quarterly reports and was not paid when the partnership had no money
demonstrates that he was not an employee receiving a salary, but rather, a partner sharing in
profits and losses. Smith testified that he understood he was to share in the profits from the
business. However, Smith also testified that his agreement with Gallaway was to receive a salary
of $400 per week as an employee. Further, Speicer testified that Smith was considered
subcontract labor and paid as an employee. Receipt of profits as wages does not constitute prima
facie evidence that a person is a partner. See Tex. Rev. Civ. Stat. Ann. art. 6132b, § 7(4) (West
1970). Both Smith and Speicer testified to Smith's status as an employee. The fact that Smith
was not paid regularly does not necessarily indicate an agreement to share in profits.

 Second, the State asserts that evidence was presented demonstrating an agreement
to share net losses. The State acknowledges that Smith never testified that he agreed to share
losses. However, the State claims that the obligation to share losses can be presumed if an
agreement to share profits is demonstrated. Because the trial court was entitled to conclude that
no such agreement existed, the State may not take advantage of this presumption. In addition, the
State claims that Smith did in fact share in losses because he was not paid his salary regularly and
several checks that were issued to him were subsequently voided. However, the fact that Smith
"participated" in losses because he was not paid his salary is not necessarily evidence of an
agreement to share losses.

 Third, the State claims that evidence was presented demonstrating a mutual right
of control or management. Both Smith and Speicer testified that Smith was authorized to sign
checks on an account for the Pub. However, both Smith and Speicer also testified that the
checking account was canceled one to three months after the Pub was opened and a new account
was established that did not authorize Smith to sign checks. Smith also testified that he only wrote
checks under the direction of either Gallaway or Lenington and that Lenington had "complete
control" over the finances. As further evidence of control and management, the State also points
out that Smith managed the bar and took in daily receipts. However, Smith testified that the
receipts were turned in daily to the office where Gallaway and Lenington "handled everything."

 Fourth, the State claims that evidence was presented demonstrating a community
of interest in the business venture. The State submitted into evidence a TABC permit application,
signed and sworn to by Smith, indicating that he invested $15,000 of personal funds in the
Partnership. Smith testified, however, that although he signed the document and swore to its
accuracy under oath, he never made such investment. Further, Speicer testified that he "set-up
and completed all of the books that were done on the business and there was never any capital
contribution by Mr. Smith." The State also contends that Smith invested his personal services and
skills in the Partnership by serving as the manager and cooking and bartending at the Pub. 
However, Smith testified that he was to be paid a salary for these services. In other words, he
did not intend such services to constitute an investment.

 Finally, the State claims that evidence was presented demonstrating that Smith and
Galloway intended to form a partnership. The State claims that considerable evidence was
provided demonstrating that Smith intended to be a partner in the Partnership: (1) Smith filed an
assumed name certificate indicating that he and Gallaway were doing business under the name of
"Pirates Pub"; (2) Smith applied for a mixed beverage permit through the TABC indicating that
he was a partner in the Partnership; and (3) Smith signed a lease agreement as tenant covering the
Pub premises. This evidence constitutes some evidence of Smith's intention to form a partnership. 
However, the State must also establish that Gallaway intended to form a partnership. Speicer
testified that Smith was never considered a partner in the Partnership; rather, Gallaway and
Lenington considered him "simply a manager there who did their bidding because he had no place
else to go."

 After reviewing all the evidence presented, we conclude that although the record
certainly contains evidence that Smith was a partner, the trial court's finding that Smith was not
a partner in the Partnership was not so against the great weight and preponderance of the evidence
as to be clearly wrong and unjust. Accordingly, we overrule the State's second point of error.






CONCLUSION


 We affirm the judgment of the trial court.



 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: January 20, 1993

[Do Not Publish]
1. The Partnership and Gallaway are not parties to this appeal.
2. The State did not file suit against Lenington as a partner in the Partnership, and the
issues of his status and potential liability are not material to this appeal.